By the WHOLE COURT.
ROGERS, J.
Plaintiffs, as the owners of a mineral lease covering lands in the parishes of Red river and De Soto, instituted this suit against defendant, claiming $17,000 for an alleged deficiency of 30 acres in the property in the former parish, and for the price of a lease subsequently executed by defendant of 16 acres of the land in the latter parish. The demand was for $2,000 for the shortage in land and for $15,000 for the value\ of the posterior lease.
Defendant denied liability, averring there was no deficiency, but only a misdescription, through error, of the 30 acres, and that the failure of plaintiffs to develop the property as required by the lease contract operated as a forfeiture of whatever right or interest they had therein.
There was judgment for defendant, and plaintiffs have appealed.
The lease in question was executed on April 17, 1919, for a cash consideration of $5,000. It affected five separated tracts of land containing, in the aggregate, 118 acres. One of these tracts is described in the deed as:
“Thirty acres known as R. A. Perryman tract out of the west half of the southeast quarter (W. % of S. E. %) lying south of Honey bayou, in section 8, township 12 north, range 10 west.”
It appears, however, that the Perryman tract is not lo'cated in the W. % of the S. E. Vé of section 8, but is situated in the W. % of the E. % of the S. E. % of section 8.
Something more than three months after the execution of this lease, the owner of the W. % of the S. E. % of section 8 instituted proceedings to enjoin the lessor (the present defendant) “her agents and representatives”, from entering upon his said property.
In the belief that plaintiff in this injunction proceeding was asserting title to property owned by her, defendant filed an exception of no cause of action and a motion to dissolve the injunction.
Upon ascertaining, subsequently, that none of her property .was involved in the proceeding, and as she, in turn, was not claiming any of,the property of plaintiff therein, defendant consented to a judgment making permanent the injunction applied for.
On September 12, 1919, the lessor (present defendant) filed suit against lessees (present plaintiffs) to cancel the lease of April 17, 1919, on the ground that the agreement had been violated by defendants’ failure to drill a well for oil or gas on said property within a reasonable time after the signing of the contract; that, although more than four and a half months had elapsed, the lessees had made no effort whatever to drill a well, notwithstanding 30 days was a reasonable time in which to begin drilling operations.
On November 16, 1920, defendant, for a cash consideration of $15,000, entered into the mineral lease with H. L. Hamilton of the 16 acres of land in De Soto parish.
On November 22,1921, the present suit was instituted. Plaintiffs also filed pleas of estoppel in the district court and in this court.
The lease of April 17, 1919, among other things, provided:
“It is mutually agreed and understood, and is the essence of this contract, that the said grantee shall, within a reasonable time, prosecute diligently the drilling of a well for oil or gas on the within described premises, drilling said well to a depth of 3,000 feet, unless oil or gas is found in paying quantities at a lesser depth. * * * It is expressly agreed and.understood that should the grantee fail or refuse to carry out the obligation to drill said well as above set forth, then, in such event, and on such default, this lease shall wholly cease and determine.”
Defendant contends it was agreed, at the time of the execution of said lease, that plaintiffs were to begin drilling operations imme *689 diately on some part of the leased property, and that they had not only not complied with said obligation, but had not even attempted to comply therewith, and that, by reason of lessees’ default in this particular, the lease became forfeited.
It is not disputed that the lessees took no steps whatever to drill a well 'for oil or gas upon any portion of the property affected by the lease.
It further appears that lessees, although they had knowledge of the Robertson injunction suit shortly after it had been filed, took no action against their lessor for the rescission of the lease, nor made any demand for the reformation of the instrument. Lessees slept on the proposition from April 17, 1919, until November 22, 1922, a period of more than 31 months, when they suddenly awoke and instituted the present suit.
Plaintiffs’ position seems to be that, notwithstanding nothing was done by them towards complying with the stipulations of their contract, the lease continued to remain in full force and effect, and that the option was theirs to drill a well upon the property at any time they saw fit.
Plaintiffs’ position is untenable. It is shown by the testimony that at the time of the execution of the lease another company was drilling a well, with favorable indications, in section 19, in close proximity to the leased property, and that the immediate drilling of an offset well was one of the requirements of plaintiffs’ lease. Within a week after the signing of the lease, however, the well in section 19 proved to be a failure, and plaintiffs called upon Messrs. G. W* and W. R. Hollingsworth, at the town of Gahagan, to obtain a delay in drilling on the property.
While there is some conflict in the testimony as to what occurred in the conversation had between the parties at this meeting at Gahagan, it is shown that it was plaintiffs’ desire to obtain an extension of the time within which to begin drilling operations, which, in itself, was a clear acknowledgment that the reasonable time set forth in the lease was understood to*mean the immediate commencement of the work.
Mr. Woodley, one of the plaintiffs, testified that in the conversation it was agreed that it would be best to await other developments before beginning drilling operations. This is denied by the two Hollingsworths, who testified that they had consented to' a delay of only ten days. As time is all important in such contracts, the probabilities .support the testimony of the Messrs. Hollingsworth. But, however that may be, the burden of proying the granting of the extension is upon plaintiffs, and they have not discharged that burden.
The parties expressly stipulated in the lease that it was “the essence of the contract” that drilling should be commenced “within a reasonable time” and prosecuted with diligence. They thus emphasized a condition which is inherent in all oil and gas leases. So much is time considered to be an “essence” of such leases that the court is without power or right to grant an extension for performance. Murray v. Barnhart, 117 La. 1024, 42 South. 489.
The term “reasonable time” is a relative one, and its meaning is dependent upon the circumstances of the particular case in which the court is called upon to define it.
In the case at bar it is shown, as heretofore stated, that at the time the contract was entered into a well was being drilled by other parties in section 19, with every indication that it would be brought in as a producer.' It is also shown that lessees had several idle drilling rigs in the vicinity, and that they were in a position to put one of said rigs into immediate use.
At the time, September 12, 1919, when defendant filed suit to cancel the lease, no effort whatever had been made by plaintiffs to drill a well; nor did they, in their answer to said suit offer to perform their contract, content *692 ing themselves merely with an evasive defense to the action.
Under the circumstances of this case it is our opinion that a delay of more than four and one-half months in which to begin drilling operations was unreasonable and operated as a cancellation of the contract.
Counsel for plaintiffs have cited a number of cases defining the term ‘‘reasonable time.” None of these cases, however, attempt to define the term in connection with the beginning of drilling operations. They are all cases involving the sale of standing timber, which is a very different transaction from a lease for the purpose of drilling for oil or gas. In the one case there is an absolute sale, and in the other case there is merely a grant of a servitude.
There is no force in the contention that the “reasonable time” which plaintiffs had to comply with the terms of the lease could only begin to run after notice of lessor’s intention to forfeit, and that as there had been no such notice given there Had not been any default on the contract.
The agreement between plaintiffs and defendant expressly stipulated:
“Should the grantee fail or refuse to carry out the obligation to drill said well as above set forth, then and in such event, and on such default this lease shall wholly cease and determine.”
In Wilder v. Norman et al., 147 La. 413,85 South. 59, this court held that a clause in the contract reading, “failing to do so all of his rights hereunder shall cease and determine,” was a forfeiture clause, and that the violation thereof ipso facto canceled the contract. See, also, Talley v. Lawhon, 150 La. 25, 90 South. 427; Jennings-Heywood Oil Syndicate v. Houssier-Latreille Oil Co., 119 La. 795, 44 South. 481.
Plaintiffs vigorously assert that there was a deficiency of 30 acres in the 118 acres of land covered by the lease. This assertion is based upon the admitted fact that the 30 acres designated as the “R. A. Perryman tract” is not situated, as set forth in the lease, in the W. % of the S. E. % of section 8, township 12 north, range 10 west, south of Honey bayou, parish of Red river.
Passing by the question of whether or not the denomination in the deed of the “30 acres known as the ‘Perryman tract’ ” is a specific and definite designation controlling the description or only a general description governed by a specific and particular recital, it is conclusively shown that there is a, body of land containing 30 acres situated south of Honey bayou in the W. % of the E. % of the S. E. % of said section 8, designated as'the “Perryman tract,” and well known by that name throughout the community in which it is located.
Although this error in the deed is shown to have come to the knowledge of plaintiffs shortly after the lease was executed, they took no steps either for the rescission of the contract nor for the reformation of the deed. In fact, even in the present proceeding filed more than 31 months after the date of the agreement, they are making no such claim; they are not suing to rescind the lease nor to have the deed corrected, but they are standing on the contract with a claim for the alleged deficiency in the land described therein.
It is true that the “Perryman tract” belonged to the community existing between Mr. and Mrs. Hollingsworth, but that point was not raised in the pleadings, and cannot be considered. It certainly was not urged as a reason for the nondevelopment of the lease, and, besides, it is a serious question as to whether the Hollingsworth boys, who took an active part on behalf of their mother in negotiating the lease and were to receive an interest therein when oil was developed, would not have been estopped from questioning its validity. At any rate they were not called upon by plaintiffs to sign the lease.
It is apparent that the defense of shortage *693 in the land leased is an afterthought, purely and simply, and a mere technical pretext sought to be made use of by plaintiffs to avoid the consequences of their default on their contractual obligations.
It would have cost plaintiffs approximately $22,000 to have drilled a well on the leased property. When the well in section 19 came in as a dry hole instead of a producer, as had been expected by the parties, plaintiffs evidently preferred to sacrifice the $5,000 invested by them, rather than to comply with their contract and drill a well at a cost of $22,000. It was only when defendant, some 18 months after the date of the lease, after its forfeiture had taken place, made another contract covering the 16 acres in De Soto parish, and from which she realized $15,000, that plaintiffs suddenly began to interest themselves in the contract which they had relinquished in the hope of reviving same and of recovering from defendant the fruits of the property which had been covered by the abandoned lease.
We do not fipd that defendant has estopped herself as set out and contended for by plaintiffs in their pleas of estoppel filed in this court and in the district court.
Judgment affirmed.
BRUNOT, LEOHE, and THOMPSON, JJ., take no part.