## SPENCER et al. v. TRANSCONTINENTAL OIL CO.

(District Court, W. D. Louisiana. October 10, 1924.)

No. 207.

**1. Mines and minerals ☞78(2)—Default under oil and gas lease held such as to entitle lessors to cancellation.**

An oil and gas lease covering a large acreage in a proved gas area provided that, if no well was commenced and prosecuted with due diligence on or before the expiration of a year, it should terminate unless the lessee should pay a rental of $12,500, which should operate as a gross extension on like terms as to subsequent renewals. *Held*, that the commencement of a well shortly before the end of the first year, which after striking gas was shut off and abandoned until near the end of the second year, when work was resumed and the well completed as a gas well after the end of that year, was not a prosecution of the work in good faith for development purposes as con-

2 F.(2d)—18

templated by the lease, and, no rental having been paid, *held*, that the lessors were entitled to its cancellation.

**2. Mines and minerals ☞78(2)—Equities of lessee on cancellation of oil and gas lease determined.**

On cancellation of an oil and gas lease at suit of the lessor for noncompliance with its terms by the lessee, but after the lessee had completed a gas well at considerable cost, the latter *held* entitled to such well with sufficient ground for its operation, subject to payment of the royalties reserved in the lease.

In Equity. Suit by Mrs. Lula Spencer and others against the Transcontinental Oil Company. Decree for complainants.

Elder & Everett, of Farmerville, La., for plaintiffs.

Thigpen, Herold & Lee, of Shreveport, La., for defendant.

DAWKINS, District Judge. Plaintiffs brought this suit in the Fourth district court of Louisiana, to have annulled a certain lease for oil and gas upon lands situated in the parish of Union. Defendant removed the case here upon the ground of diverse citizenship, and it has been submitted upon a stipulation to be decided at chambers in vacation.

The grounds of complaint were: First, a want of authority in one of the plaintiffs as tutrix of her minor children to enter into said lease; and, second, the nonperformance by defendant of the obligations of the contract.

Any defect, if such there was, in the original proceedings for authorizing the tutrix to act, I think was cured by a subsequent family meeting duly approved and homologated by the court, pursuant to which the former lease was ratified, and, in my opinion, this eliminates that cause for attack upon the lease.

[1] The following are substantially the facts shown by the record and relied upon by plaintiffs for annulling the contract:

On the 18th day of November, 1919, plaintiffs executed in favor of defendant, who promptly accepted it, an oil and gas lease upon a tract of land consisting of several hundred acres situated in Union parish, reciting a cash consideration of $2,000 and to run for a period of five years, subject to these stipulations:

"If no well is commenced on said lands and prosecuted with due diligence on or before the 18th of November, 1920, this lease shall terminate as to both parties unless the lessee, on or before that date, shall pay or tender to the lessors or to the lessors' credit in the Ouachita National Bank at Monroe,

La., or its successors, which shall continue as a depository regardless of changes in the ownership of said land, the sum of twelve thousand five hundred and no/100 ($12,500.-00) dollars which shall operate as a rental and cover the privileges of deferring the commencement of a well for twelve (12) months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid but also the lessee's option of extending that period as aforesaid and any and all other rights conferred.

"Should the first well drilled on the above-described land be a dry hole, then and in that event if the second well is not commenced on said land within twelve months from the expiration of the last rental period which rental has been paid, this lease shall terminate as to both parties, unless (of) the lessee on or before the expiration of said twelve months shall resume the payments of the rentals in the same amount and in the same manner as hereinbefore provided. And it is agreed that upon the resumption of the payment of rentals as above provided that the last preceding paragraph hereof shall continue in force just as though there has been no interruption in the rental payments."

Some time during the month of September, 1920, a location for a well was made upon the premises, and in October the derrick was built, being completed about the 19th of that month. A few days before the 18th of November, 1920, but just prior to the expiration of the first year of the lease within which the next rental had to be paid to avoid forfeiture, defendant began drilling with a drill stem and went down 15 feet. Thereafter, although a crew was kept upon the ground, no further drilling was done until about the 12th of December, due, according to the defendant's witnesses, to the fact that they were awaiting arrival of pipe or well casing. However, there is no explanation as to what caused the delay, whether by the shipper, carrier, or defendant in failing to timely order it. On the latter date operations were renewed, and about the middle of March, 1921, gas was struck at a depth of approximately 2,075 feet. The flow was so strong that it blew out the drill stem and wrecked the derrick. But, inasmuch as de-

fendant was trying to find oil, the gas flow was choked off and drilling continued to a depth of 2,563 feet, where salt water was struck on August 14th. Defendant then ceased operations and discharged its crews, but left a watchman on the ground for about a week. After that time, and during a period of more than 80 days, nothing further was done, although the machinery and casing appears to have been left on the ground, until about the 10th of November, approximately 8 days before the second annual period for the payment of the rent, which would have expired on the 18th of November, when defendant started "plugging back" in the same hole for the purpose of developing a gas well.

On November 16th, work of perforating the casing at the gas strata was begun, and on Thanksgiving Day, November 23d, the well was completed as a gasser, producing something less than 5,000,000 feet. November 25th, or two days after completion, this suit was filed. Up to that time defendant had expended approximately $40,000 in addition to the original consideration of $2,000.

No explanation was offered or attempted by defendant as to why it ceased operations for the 80-odd days from August 14th to November 10th, and it is contended by the plaintiffs that the lease was abandoned and forfeited; that the subsequent decision to make a gas well was an afterthought and done for the purpose of evading the payment of the rental of $12,500 which would have otherwise been necessary to continue the lease after November 18, 1921. On the other hand, counsel for defendant takes the position that under the terms of its contract, it had the right to produce either oil or gas; that the discovery of gas was made when the strata was struck in March, 1920, which gave it a vested right under the lease; that it drilled deeper in the hope of finding oil for the joint benefit of itself and the plaintiffs, as it was entitled to do, and after striking salt water, by plugging back and converting the hole into a gas well, its obligations under the contract were discharged to the extent of relieving it from the payment of rentals prior to November 18, 1921.

The property covered by this lease, at the time of its execution, was within the proven gas area; hence the substantial consideration and large rental stipulated. At the same time, I take it, from the course pursued, all parties were hopeful of striking oil; hence the boring deeper after reaching the gas rock. However, time is of the essence of mineral leases, and there is implied

in all such contracts prompt and reasonable development. Defendant undoubtedly had the right to produce either gas or oil, but it was required to perform its agreement faithfully It was permitted, if it saw fit, to defer drilling for the whole period of five years upon paying the $12,500 for the privilege, but once it chose to drill instead, good conscience required that it should continue in good faith, and not merely prolong or resume its operations at such times as would serve to pass the periods when rent was due. I think that if it had promptly determined to convert the hole into a gas well, and had undertaken to do so after striking salt water within a reasonable time, it would have been within its rights, even though the circumstances of the case had carried it beyond the 18th of November, 1921. But when it left the job on August 14th, discharged its crews, and only resumed for the purpose of producing gas nearly three months later, just a few days before the rental had to be paid, it can scarcely be said to have been in good faith. In these circumstances, plaintiffs could not have lawfully protested because defendant's former efforts, acquiesced in by them, had been in lieu of rental for the second year, and it could have continued the privilege for another year by paying the $12,500 before November 18th. This suit was filed seven days after the expiration of the second annual period and only two days. after the pipe had been punctured for the purpose of making a gas well. If, under the circumstances, the payment of rent was necessary, the lease had already lapsed five days before the well was completed.

Two years had elapsed without plaintiffs having received anything for their lease other than the initial payment, and in a proven gas area. Defendant had waited practically all of the first year to begin and had consumed the second in boring one hole. The main object of the lease from their standpoint was to have development of the property, which they have been denied now for approximately five years. It is true they filed this suit after the expiration of two years, but it was not accompanied by injunction.

My opinion is that defendant had the option of either completing the undertaking as a gas well, or paying the rental, but that, in view of its conduct, this had to be done before November 18, 1921, and when it failed to do either within that time, it lost the right to further develop the lease. Woodley v. Hollingsworth, 154 La. 691, 98

So. 87; Texala Oil Co. v. Caddo Mineral Lands Co., 152 La. 562, 93 So. 788; Hutchinson v. Atlas Oil Co., 148 La. 553, 87 So. 265, and authorities cited.

[2] But equity requires that it should not be deprived altogether of the fruits of its labor, and plaintiffs should not be permitted to enrich themselves at defendant's expense. The circumstances are such that I think defendant should be recognized as entitled to the well with the use of sufficient land surrounding the same for its operation with the obligation to pay to plaintiffs the royalties provided under the lease.

For the reasons assigned, the lease of November 18, 1919, as well as the ratification thereof on April 30, 1920, covering the property of plaintiffs, is canceled, annulled, and ordered erased from the records of Union parish, save and except as to the well and appurtenances completed on November 23, 1921, together with a square of ground of 10 acres of which said well shall be the center and as to which the rights of defendant are recognized and ordered enforced under the terms and conditions of the lease.