(42 South. 489.)

No. 16,163.

MURRAY et al. v. BARNHART. PITTS v. SAME (two cases). GRAHAM v. SAME.

(Dec. 10, 1906.)

1. MINES AND MINERALS—LEASE—INDIVISIBILITY.

Where the obligation of one party to a contract is indivisible, the corresponding obligation of the other party is necessarily so likewise. Thus the obligation of the lessor of a tract of land is indivisible among his heirs when the consideration of the lease is the completion of one well for the exploration of the land for oil and gas.

2. SAME—ACTION TO RESCIND.

A petition which alleges that the defendant entered into a contract to complete a well within one year, and alleges that at the time of the filing of the suit, four years after the date of the contract, the defendant had not yet even made preparations for commencing the well, and which prays that the contract be avoided. sets forth an action for rescission of contract.

3. SAME—CONSIDERATION—SUFFICIENCY.

The civil law, differently from the common law, requires that the consideration of a contract be serious, and not out of all proportion with the value of the contract. Hence, in a contract of more than $100 in value, the traditional $1 consideration of a common-law contract is looked upon by the civil law as not being a serious consideration; that is to say, as not being any consideration at all. And the same may be said of $2 for the privilege of retiring at any time from such a contract. Therefore, in an oil and gas lease, the obligation of the lessee to complete one well within one year will be held to be purely potestative, and as such to entail the nullity of the contract, where he at the same time reserves to himself the right to retire from the contract at any time on paying $2. and this notwithstanding that the consideration of the contract is stated to be $1 cash in hand paid, receipt whereof is acknowledged.

4. SAME.

Houssiere-Latreille Oil Co. v. Jennings-Heywood Oil Syndicate, 38 South. 932, 115 La. 107, distinguished.

5. SAME — CONSTRUCTION — PERFORMANCE OF CONDITIONS—PENALTIES.

Where, in an oil and gas lease, it is stipulated that the lessee shall complete one well within one year, "or pay at the rate of $4 quarterly, in advance, for each additional three months such completion is delayed," and it is expressly declared that the contract is made "for the sole and exclusive purpose of mining and operating for oil and gas," and it is otherwise manifest from the instrument as a whole that the intention of the parties was not that the lessee should have the right to simply hold the land during the term of the lease—not exploring it himself for oil and gas, and not allowing any one else to do so—but that he should be bound to complete a well within one year, the obligation to pay $4 quarterly will be held to be a mere penal clause, and not an alternative obligation. and the making of said payments will be held not to be a fulfillment of the principal contract, in whole or in part, but merely the payment of liquidated damages.

6. CONTRACTS—RESCISSION.

A contract to do is breached by the failure of the obligor to perform within the time agreed upon, and it then becomes optional with the obligee to claim the rescission of the contract or damages; and only in the latter event does he need to put the obligor in default as a prerequisite to bringing suit.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 1174–1180.]

7. MINES AND MINERALS—LEASE—RESCISSION.

In a suit to rescind a contract to do, the court may, according to the circumstances of the case, grant the obligor further time in which to perform. Further time is refused in this case because in a mineral contract time is always more or less of the essence, and because the obligor offers no excuse for having allowed four years to elapse without any effort on his part to fulfill his contract.

8. CONTRACTS—RESCISSION—RETURN OF PAYMENTS.

Payments made by way of liquidated damages for delay in the performance of a contract are not required to be returned in a suit for the rescission of the contract because of nonperformance.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 1186.]

(Syllabus by the Court.)

Certiorari to Court of Appeal, Parish of Caddo.

Actions by John Murray and others, by L. J. Pitts, by A. E. Graham, and by M. J. Pitts against W. E. Barnhart. The suits were consolidated. Judgment for plaintiffs was affirmed by the Court of Appeal, and Barnhart appeals for certiorari or writ of review. Affirmed.

Alexander & Wilkinson, for applicant. Frank J. Looney and Charles Latham Gaines, for respondents.

PROVOSTY, J. In this matter four suits are consolidated—three brought by the heirs of E. J. Pitts, and one by the assigns of another heir. One of them was brought a short time in advance of the others.

Their object is to set aside an oil lease made by E. J. Pitts to the J. M. Guffey Company, and by said company transferred to the defendant, W. E. Barnhart. There has been a partition of the land among the heirs; hence four suits, instead of one.

For making their contract the parties used the blank form given at page 869 of Thornton on "The Law Relating to Oil and Gas," which also was the form used by the parties in the case of Houssiere-Latreille Oil Co. v. Jennings-Heywood Oil Syndicate, 115 La. 107, 38 South. 932. The contract reads as follows:

"State of Louisiana, Parish of Caddo.

"Agreement made and entered into the 27 day of March A. D. 1901, by and between Edward J. Pitts of Surry, parish of Caddo and state of Louisiana, party of the first part, and J. M. Guffey Company herein represented by W. E. Barnhart, their agent & atty. in fact, party of the second part, witnesseth: That the said party of the first part, for and in consideration of the sum of one dollar to him in hand paid well and truly paid by the said party of the second part, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the said party of the second part, to be paid, kept and performed, has granted, demised, leased and let, and by these presents do grant, demise, lease and let unto the said party of the second part, its successors or assigns, for the sole and only purpose of mining and operating for oil and gas, and of laying pipe lines and of building tanks, stations and structures thereon to take care of the said products, all that certain tract of land, situate in Caddo parish, and state of Louisiana, bounded, and described substantially as follows: East ½ of S. E. ¼ of section twelve (12) township twenty (20) north, range sixteen west; west ½ of S. W. ¼ of section seven (7) township twenty (20) north, range fifteen (15) west excepting vanes sold to John Murray, containing 158 acres more or less, and being same land conveyed to the first party by patent U. S. Gov't, by deed, bearing date, reserving however therefrom 300 feet around the building on which no well shall be drilled by either party except by mutual consent. It is agreed that this lease shall remain in force for the term of twenty-five years from this date, and as long thereafter as oil or gas, or either of them, is produced therefrom by the party of the

117 LA.—33

second part, its successors or assigns. In consideration of the premises the said party of the second part covenants and agrees: First. To deliver to the credit of the first party, his heirs or assigns, free of cost, in the pipe line to which it may connect its wells, the equal one-tenth part of all oil produced and saved from the leased premises. Second. To pay $100 per year for the gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises, said payment to be made on each well within sixty days after commencing to use the gas therefrom, as aforesaid, and to be paid yearly thereafter while the gas from said well is so used. Second party covenants and agrees to locate all wells so as to interfere as little as possible with the cultivated portions on the farm. And further, to complete a well on said premises within one year from date hereof, or pay at the rate of four dollars quarterly, in advance, for each additional three months such completion is delayed from the time above mentioned for the completion of such well until a well is completed; and it is agreed that the completion of such well be and operate as a full liquidation of all rental under this provision during the remainder of the term of this lease. Such payments may be made direct to the lessor or deposited to his credit in Merchants' and Farmers' Bank of Shreveport, La. It is agreed that the second party is to have the privilege of using sufficient water from the premises to run all necessary machinery, and at any time to remove all machinery and fixtures placed on said premises; and, further, upon the payment of two dollars at any time by the party of the second part, its successors or assigns, to the party of the first part, his heirs and assigns, said party of the second part, its successors or assigns, shall have the right to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine, and this lease become absolutely null and void. Thus done and signed this 27 day of March, 1901," etc.

The lessee having suffered four years to elapse without his having done anything towards the fulfillment of his contract to complete a well on the leased premises, the heirs of E. J. Pitts notified him that they considered the lease to be at an end, and were going to bring suit to have it declared to be a nullity, and shortly afterwards the first of the present suits, that of Murray et al., was filed. Thereupon, and before the three other suits were filed, the said lessee erected a derrick on that portion of the land which by the partition had fallen to Mrs. Graham.

and which is now held by her in severalty. Beyond erecting this derrick and making regularly the quarterly deposits of $4, the lessee has done nothing towards the fulfillment of his contract. Defendant continued to make the deposits in the name of E. J. Pitts after the latter's death. Pitts died two years before the institution of these suits, and defendant had known of his death and who were his heirs one year before the institution of the suits. The record does not show whether the lessors withdrew from the bank, or consented to accept, any of the deposits; nor what were the circumstances surrounding the making of the lease—for instance, whether the land was a proven oil field, or was contiguous to, or near, or far from, a proven field.

The district court annulled the lease, and the Court of Appeal affirmed the judgment. The case is before this court on writ of review.

In the Court of Appeal the plaintiffs moved to dismiss the appeal on the ground that the amount involved was less than $100; each suit involving only one-fourth of the land, or one-fourth of the lease, and the only allegation or proof of value being the admission that defendant, if present, would testify that the lease, as a whole, was worth more than $100. The Court of Appeal thought that the lease was indivisible, and that, therefore, the whole of it was involved in each of the suits, and that in consequence the court had jurisdiction. In this view we concur. The obligation to complete one well is indivisible in its nature, and, as a necessary consequence, the corresponding obligation to deliver the land is also indivisible; since, naturally, if the whole of one side of a contract be fulfilled, the whole of the other side must likewise be fulfilled. Civ. Code, art. 2109; Pothier, Obl. 215.

Coming to the merits, we find that the three suits last filed are broader than the first. All four demand that the lease be decreed to be void on its face by reason of the obligation of the lessee being purely potestative. The three last demand, in addition, that it be annulled because of its breach by defendant.

On the first cause of action plaintiffs contend that the $1 said to have been paid by the lessee and the $2 stipulated to be paid by him in case he exercises his right to put an end to the contract are not serious amounts; and that, therefore, the situation is as if the amounts did not figure at all in the contract; that is to say, as if nothing, not even the $1, had been paid by the lessee, and nothing had thereafter to be paid by him, not even the $2, for the exercise of the right to put an end to the contract.

On the second cause of action plaintiffs contend that the sole obligation of defendant under the contract was to complete one well, and, in case it produced oil, to deliver to the lessor the latter's share of the oil, or, in case it produced only gas, to pay $100 per year; that the quarterly payment of $4 is not stipulated as an alternative obligation, but as a penal clause; and that, defendant having breached his obligation to complete one well, the contract should be set aside for that reason.

The district court sustained both of these contentions, but elaborated only the second. The Court of Appeal based its judgment exclusively on the first.

The learned counsel for defendant contend that the sole complaint made against the lease in the several petitions is that it contains a potestative condition, and is for that reason void on its face, and that the sole demand is that the lease be decreed to be void; that there is no complaint as to breach of contract, or as to the insufficiency of the $4 quarterly payments or of the $2 to be paid for terminating the contract. They contend, and in this they coincide with plain-

tiffs, that the true consideration of the lease was the obligation of the lessee to complete one well; and they argue that the $2 payment for terminating the lease, though small, yet is a payment, and prevents the contract from being purely potestative; that, moreover, it is evident from the contract, taken as a whole, that the intention of the parties was that the lessee should be under the absolute obligation to complete at least one well, and only after having done so, and after the well had failed to produce oil or gas, might exercise the right to put an end to the contract on making the $2 payment.

In saying that the petition contains but one cause of action and one demand, counsel are correct in so far as the petition of the first suit, that of John Murray et al., is concerned, but not in so far as the other petitions are concerned. True, these other petitions might have been made more full and more explicit, but as they stand they set forth the breach of contract and ask that the contract be for that reason annulled. After having set forth the contract and its purely potestative character on the part of the lessee, they proceed as follows:

"Petitioner further shows that the said Barnhart has never begun any preparation for boring the well, and, further, that while the said E. J. Pitts has long been dead to the knowledge of Barnhart and he is heir, which is also well known to the said Barnhart, he has never been tendered any portion of the amount set up as a penalty for failure to complete the well."

. And the prayer is:

"For judgment decreeing the nullity of the so-called lease and avoiding same," etc.

A petition which alleges that a contractor obligated himself in March, 1901, to complete a well within one year, and that in June, 1905 (the date of the filing of the suits), he had not yet even begun preparations for the completion of the well, sets forth a breach of the contract. And the prayer is distinctly to the effect, not alone that the lease be decreed to be null, but also that it be "avoided."

We agree with plaintiff that the contract is purely potestative on the part of the lessee. We do not think that, as contended for by defendant's learned counsel, the contract, taken as a whole, can be interpreted to mean that the lessee was to have the right to terminate the lease only after he should have completed one well. The language is that he is to have that right "at any time." "At any time" means at any time, and not after a certain time, or after the fulfillment of a certain condition. If the intention had been to express the idea that the right should be available, only after the completion of the first well, the parties would obviously have so expressed themselves. And we do not think that $2 can be considered a serious amount. If the contract had not been worth 10, 20, and a 100 times that much, the parties would hardly have gone to the trouble and expense of executing and recording this formal contract. Nothing shows that conditions have so changed that the contract has become more valuable, and at present it is admittedly worth more than $100, and from the manner in which the case is being litigated the inference is strong that it is worth considerably more than a mere $100. At common law "the slightest consideration is sufficient to support the most onerous obligation. The inadequacy, as has been said, is for the parties to consider at the time of making the agreement, and not for the court when it is sought to be enforced." 9 Cyc. 365; A. & E. E. vol. 6, p. 694. But under our law the consideration "must be serious": "it must not be out of all proportion with the value of the thing." Article 2464, Civ. Code. That article has special reference to the price of a sale, but the principle it involves is not peculiar to sales. It is a general principle of the civil law, and as old as the civil law itself. The example given by Ulpien as an

illustration of it is not that of a sale, but, as happens, is that of a lease:

"Si quis conduxerit nummo uno, locatio nulla est; quira hoc donationis instar obtinet." L. 46 Dig. f. f. Loc. Cond.; Pothier, Vente, Nos. 18 and 19; Merlin, Rep. Vo. Vente, § 1, art. 2, No. 1; Durantor, T. 16, No. 100; Troplong, Vente, No. 149; Marcade on articles 1591 and 1592, C. N.

In such a case the presumption is that the parties did not intend that the trifle named should ever be paid at all, and the situation is looked upon as being as if no amount had been named. We conclude that the contract, since it accorded to the lessee the right to put an end to it at any time, was purely potestative on the part of the lessee, and therefore null. Civ. Code, art. 2034.

This difference between the common and the civil law with reference to the sufficiency of a mere nominal consideration for supporting a contract distinguishes this case from that class of cases to be found in the reports of other states, of which the case of Brewster v. Lanyon Zinc Co., 140 Fed. 801, 72 C. C. A. 213, cited in defendant's brief, is an example in which contracts like the present one have been held to be valid notwithstanding the faculty accorded to the lessee to retire from the contract at any time, with or without a nominal payment. At common law, the $1 consideration being of itself sufficient to support the contract, it can make no difference that the lessee is allowed to retire at any time. The situation is precisely as it would be under our law in the case of a lease where the lessor had paid the rent in advance for the entire term of the lease, when it could make no difference whether he was allowed the privilege of throwing up the lease at any time he pleased, so long as he did not demand the return of any part of the payment he had made.

The case of Houssiere-Latreille Oil Co. v. Jennings-Heywood Oil Syndicate, 115 La. 107, 38 South. 932, cited in defendant's brief, is distinguished from the present case, in that in it the $100 agreed to be paid for the right of putting an end to the contract was deemed by the court for the purpose of the discussion to have been a sufficient or serious consideration. It would be a precedent for this case if the $2 in this case were held to have been a serious consideration; but the court looks upon it as not having been such.

However, since a potestative obligation retains that character only so long as it has not been fulfilled, in whole or in part, it becomes necessary to inquire whether defendant's contract was not fulfilled, in whole or in part, prior to the service of notice upon him by the lessors that they intended to put an end to the contract. The only thing done by the defendant under the contract prior to the service of notice upon him by the plaintiffs was that he made the quarterly deposits. These deposits were made, we think, in substantial compliance with the contract. The plaintiffs might have withdrawn them if they had chosen to do so; and, indeed, the record fails to show positively that they did not actually do so. The question arises, then, whether the making of these quarterly payments was a fulfillment, in part or in whole, of the obligation of the contract. We think not. We agree with plaintiffs that the sole and exclusive obligation of the contract was to exploit the land for oil and gas, save only that, in case of delay in fulfilling that obligation, defendant should pay, by way of penalty or liquidated damages, $4 for every three months' delay. In other words, the obligation to make these quarterly payments was not an alternative obligation of equal rank with that to complete a well, and the fulfillment of which would have been as effectual for fulfilling the contract (Civ. Code, art. 2067); but it was simply a penal clause or accessory obligation, whose fulfillment would in no wise contribute towards the fulfillment

of the real obligation of the contract. Civ. Code, arts. 2117, 2118, 2125.

The intention that the development of the land for oil and gas should be the sole and exclusive object and purpose of the contract is not only patent on the face of the contract as a whole, but is expressly and explicitly declared. The lease is made, says the contract, "for the sole and exclusive purpose of mining and operating for oil and gas." Indeed, the very clause itself by which the quarterly payments are stipulated declares that they are to be, not in fulfillment of the contract, but for every three months the fulfillment of the contract is delayed. Hence they were not stipulated by way of alternative obligation, but by way of a penal clause. If this stipulation for quarterly payments were not a mere penal clause, but were an alternative obligation, the lessee might, by making the payments, keep the land idle and undeveloped for oil and gas for the entire term of the lease; and thus the contract be perverted from one to exploit the land in the immediate future for oil and gas into one by which the land might be effectually shut off from all exploration for oil or gas for a quarter of a century. Such a construction needs only to be stated to be at once repudiated.

True, the clause wherein the payments are stipulated is joined to what precedes by the conjunction "or," and "or" usually balances alternatives. But "or" is not infrequently used to name a penalty. Thus:

"Do this, or stand the consequences." "Perform this public duty, or pay the fine." "I will build the house by a certain day, or pay $1,000." Civ. Code, art. 2122. "I will complete a well, or pay $4 quarterly thereafter."

True, again, the contract is called a "lease," and the $4 quarterly payments are called "rental"; but the name given to a thing does not change its nature, and in this case the nature of the contract and of these payments is absolutely unmistakable.

The conclusion which we have thus reached, that the contract was null because purely potestative, really dispenses us from the necessity of considering the second cause of action, that based on breach of contract; but the case has had our careful consideration in that aspect also, and we may as well proceed to state our views also in that regard.

When plaintiffs served notice on defendant that they no longer desired the contract to be performed and would bring suit for its dissolution, three years had elapsed since the expiration of the one year within which the contract was to have been performed; hence, defendant had unquestionably breached his contract. The quarterly payments, as we have shown, were not an alternative obligation, but merely liquidated damages for delay in the performance of the contract. Hence, defendant's failure to perform the contract entitled the plaintiff to demand its dissolution. "A resolutory condition is implied in all commutative contracts, to take effect, in case either of the parties do not comply with his engagements." Civ. Code, art. 2046.

The learned counsel for defendant say that defendant was never put in default, and no demand was made on him to develop the property. The answer, so far as concerns want of demand, is that the contract required that one well should be completed within one year, and was in itself a sufficient demand in that regard; and, so far as concerns default, it is that default is not in all cases a prerequisite to the action for rescission, but only in certain cases. Civ. Code, art. 1912. To put in default is to call upon the debtor to perform; and where that is done the debtor naturally must be allowed a certain time within which to perform. Marcade, art. 1139, C. N. But where the contract has been breached, and the resolutory condition thereby accomplished, and the creditor does not desire the performance of the contract, but the enforcement of the resolutory condition, he

naturally does not call upon the debtor to perform, but brings suit for the enforcement of the resolutory condition. "Where a term is given for the performance of an obligation, the obligor has until sunset of the last day limited for its performance, to comply with his obligation." Civ. Code, art. 2056. If he has not then performed the obligation, he has breached it, and the resolutory condition is accomplished, and the creditor may bring suit. Of course, the creditor may, as a precautionary measure, do what the plaintiffs did in this case—notify the debtor that he no longer desires that the obligation should be performed—and such a notice is after a fashion a putting in default, and it is the kind of putting in default Troplong has reference to when he says that after a putting in default the debtor can no longer offer to perform the obligation. Des Contrats, vol. 6, No. 255. Where, however, the obligation is to do, and is limited as to the time of performance, putting in default is necessary only where the purpose of the creditor is to claim damages for the delay. Where the breach of a contract is passive, damages are due only from the time the debtor has been put in default. Civ. Code, art. 1933. "To put in default," says Laurent, "is a purely technical expression, meaning that the debtor is tardy in the fulfillment of his obligation, and that he is liable for the damages which the delay may occasion the creditor." Desiring to put an end to the contract, the proper thing for plaintiffs to do was to notify the defendant, as they did, that they no longer desired that the contract should be performed, and that they would bring suit for its rescission.

After this notice had been served it was, of course, too late for defendant to offer to perform; hence, his act in putting up the derrick is insignificant. Pratt v. Craft, 20 La. Ann. 291.

The failure to perform the contract within the time specified does not operate a dissolu-tion of the contract. "The contract is not dissolved of right; the party complaining of a breach of contract must sue for its dissolution." Civ. Code, art. 2046. And the court may allow a further time in which to perform the contract, according to the circumstances. Civ. Code, art. 2047. In this case the defendant makes no pretense to any excuse for not having performed the contract, and the contract from its very nature was one calling for an early performance; hence, we do not think the circumstances call for the allowance of further time. Moreover, time is always, more or less, of the essence of a mineral contract.

The learned counsel for defendant correctly says that one who sues for the rescission of a contract must offer to return the consideration he has received. But in this case the plaintiffs have received no consideration unless it be the $1 which the contract says their author received. This $1 they, as a matter of course, must return. The $4 quarterly payments were made, not as a consideration of the contract, but, as has already been repeatedly stated, by way of liquidated damages for delay in performance.

Judgment affirmed.

NICHOLLS, J., concurs in the decree.