## TURK v. CRNKOVIC.
### No. 4212.

Court of Appeal of Louisiana. Second Circuit, Second Division.

May 4, 1932.

Madison & Madison, of Bastrop, and Robert Roberts, Jr., of Shreveport, for appellant.

Cecil Morgan and Robert A. Hunter, both of Shreveport, for appellee.

**TALIAFERRO, J.**

This is a suit to recover $787.55 damages alleged by plaintiff to have been sustained by him on account of the breach by defendant of a contract to purchase and pay for certain red and white oak staves, described in the petition. The contract relied on by plaintiff consists of a letter to him by defendant, dated October 1, 1929, which is as follows: "Dear Sir: I will buy from you the following quantity of French Claret Staves f. o. b. cars Mer Rouge, La., subject to my inspection: 8000 pcs. W. O. 42" 4471 pcs. R. O. 42" White Oak 42" @ $270 per thousand pieces and $180 for Red Oak 42" per thousand pieces, and 200 pieces W. O. 36" and W. O. 30" at $140 and $100 per thousand respectively." It will be noted that no time is mentioned or fixed in this letter within which delivery of the staves was to be made.

Plaintiff alleges that the red oak staves mentioned in this letter, at date thereof, had been manufactured, and were stacked on the railroad at Mer Rouge, La., and were pointed out to defendant at the time. This is error, as the red oak staves referred to had not been hauled from the woods on October 1st. Plaintiff did have over four thousand of such staves stacked on the railroad there, which were purchased and paid for by defendant, but these were not included in the written contract.

As to the white oak staves, he alleges that it was understood that, in view of the likelihood of the roads becoming so bad during the winter as to render it impossible to deliver these staves to the railroad, such delivery could be made during the late spring or in the summer of 1930; that it was also understood that plaintiff would load the staves on cars when requested to do so by defendant; that he manufactured and delivered the white oak staves, subject of the contract, at Mer Rouge, as agreed, and on or about June 30th he notified defendant that all of the staves were on the railroad in keeping with the contract, and he was ready to load them on cars, but defendant refused to inspect them and denied obligation on his part to pay for them.

Defendant interposes and urges several defenses to this suit, but we shall here consider only one of them, viz., the time within which plaintiff was obliged to deliver the staves on the railroad for inspection by defendant. He contends this was to be done during the month of October, and that plaintiff's failure to do so breached the contract and relieved defendant of the duty of receiving the staves and paying for them. This issue is one purely of fact.

Defendant reconvened against plaintiff and prayed for judgment for an amount alleged to have been lost by him on account of plaintiff's failure to deliver the staves in the month of October, pursuant to contract.

The lower court dismissed plaintiff's suit and rejected defendant's reconventional demand. Plaintiff has appealed.

The reconventional demand is not urged in this court.

Plaintiff testified that there was no definite date agreed upon as to delivery of the staves; that defendant stated that "anytime during next year" would do. He notified defendant by letter on June 30th that the staves were on the railroad at Mer Rouge. In January, previous, he phoned defendant that he had been unable to get the staves to the railroad on account of the heavy roads, and requested a cash advance on them, to which defendant replied that he was not obligated to purchase the staves and declined to make any advance on them. His testimony on the question of time of delivery of the staves is not corroborated by any other evidence or circumstance in the case. His position appears unreasonable.

Defendant is positive plaintiff agreed, and that it was mutually agreed, that these staves should be delivered in October, 1929. His evidence is corroborated by that of another man who plaintiff admits was present when the letter was signed on October 1st and throughout the discussions culminating in the contract. It seems to us improbable that any business man would bind himself to pay a large price for any commodity with period of delivery within the discretion of the other party over a period of one year or more. The market price of staves fluctuates, more or less, and delivery within a short time after contract would be required to protect the purchaser against market declines. It is shown by the evidence that the contract in question, from the viewpoint of a stave buyer, was not a large one, and that it would have been unreasonable and not customary for defendant to have agreed to accept the staves delivered during the year 1930. In addition to all this, plaintiff's letters to defendant in January and April clearly reflect a consciousness on his part that defendant was not then obliged to take the staves from him. In the letter of April he states to defendant that he was being given first chance to buy these staves, and, should he fail to do so, then they would be sold to others. We quote this letter in full for its decisive bearing upon the issue of fact involved in a correct determination of the case: "Mr. Crnkovic it is strange to me you dont write me if you are living. I would like to know how is stave business. It is strange to me that some how everything has gone quiet. For this reason I am writing you and beg you to let me know immediately. I have better staves than last year, first class. Have in all 34890 pieces, that is

27223 W. O. 42″, 6838 pieces R. O. 42″, 79 pieces W. O. 36″, 750 pieces W. O. 30″. This was ready and taken up April 17, 1930. For this reason I am writing you if you have desire to buy, come immediately to see what kind they are. If market is weaker, prices shall be lower than last year. I will sell to you or others. For this reason I am writing you first. You have a chance if you want. Come and see what kind are staves then will agree whatever is right."

Plaintiff urges that defendant should have put him in default if delivery of staves should have been made in October, and that his failure to do so impliedly authorized delivery any time thereafter. We do not agree with this position. Anyway, defendant informed plaintiff in January that he would not accept the staves. This was before they were hauled to the railroad. Therefore, after that date plaintiff knew definitely defendant's position on the question of paying for the staves, and even though he could be said to have had the right to deliver them to that time, for not being put in default, such right thereafter did not exist. Plaintiff had not complied with the contract as to the main point, that of delivery, in January, and thereafter, whatever he did, looking to full compliance with the agreement, was done with knowledge of defendant's determination not to accept them. But, as stated before, plaintiff's letters indicate unmistakably that he did not then hold defendant to the contract as written.

In Camors & Co. v. Madden, 36 La. Ann. 425, the court said: "In a contract of sale for the delivery of a commodity at a certain time, the vendor who notifies his vendee at about the time of delivery of his inability to fulfill his contract, relieves the latter of the legal obligation to put the vendor in default."

In keeping with this doctrine, we repeat that, after the telephone conversation between the parties in January, 1930, the question of plaintiff's right to complete the contract because he had not been put in default passed out of the case entirely.

In Moss v. Howard et al., 23 La. Ann. 465, it was said: "In a suit to recover the difference between the price agreed upon for the sale of a lot of cotton and the price which it actually brought (the first sale having failed of completion), the vendor must show that he complied with every requisite and condition on his part, and that the cause of the failure to complete the first sale was attributable entirely to the vendee, failing in which he can not recover the difference from the first vendee."

In Murray v. Barnhart, 117 La. 1023, 42 So. 489, the court said: "A contract to do is breached by the failure of the obligor to perform within the time agreed upon, and it then becomes optional with the obligee to claim the rescission of the contract or damages; and only in the latter event does he need to put the obligor in default as a prerequisite to bringing suit."

We think the lower court correctly decided the case, and the judgment appealed from is affirmed.