## ROME v. NEW RIVER LODGE NO. 402, F. & A. M.

### No. 2134.

Court of Appeal of Louisiana. First Circuit. June 28, 1940.

F. Louis Gonzales, of Baton Rouge, for appellant.

C. V. St. Amant, of Donaldsonville, for appellee.

LeBLANC, Judge.

The discovery by a survey of certain lots of ground in the village of Gonzales that the defendant's building encroached on plaintiff's property to the extent of fourteen inches in the front, gave rise to this lawsuit in which several complicated issues are presented.

The plaintiff is a druggist operating his own drug store on his property which adjoins that of the defendant on the west. The defendant is the New River Lodge No. 402, F. & A. M., a fraternal organization. It owns the two-story frame building with brick and stucco finish front which it erected on its property. The lower floor is leased to an individual who conducts a moving picture show and the upper story is used by the defendant Lodge itself as its meeting hall. The survey referred to revealed that defendant's building rested partly on the plaintiff's property, the strip of land involved being one that measures fourteen inches by thirty feet between

lines gradually converging to a closing point.

After the discovery of the encroachment, negotiations were started with the view primarily of having the defendant purchase the strip of land but these apparently were unsuccessful. They did result however in the consummation of a contract of lease which is the object of attack in the present suit.

The lease which is authentic in form, entered into on March 10, 1936, is for a period of ninety-nine years with the annual rental of $1 per year. It is stipulated in the contract that in the event lessee should fail to make payment of the rent within thirty days after receipt of a written notice and demand therein provided for, the lease shall become annulled.

Plaintiff has directed his attack upon the lease from three points: (1) That he was fraudulently induced to sign the same through certain representations made to him by the agent of the defendant Lodge relative to the defendant refraining from granting any concessions to anyone to engage in a competing soft drink, confectionery and cigarette business; (2) that the contract is without serious consideration; and (3) that it contains a potestative condition as under its terms the lessee has the right by mere exercise of its will to annul it at any time.

As an alternative demand, in the event the contract of lease should be maintained, plaintiff asks to recover damages against the defendant for violation of that part of the agreement relating to the granting of a concession to operate a soft drink, candy and cigarette business on its property adjoining the picture show. He alleges that in disregard of its agreement, defendant permitted the conduct of such a business and that by reason thereof he has been damaged in his own business of the same kind in the sum of $125 per month for a period of two years up to the time of the filing of this suit. His demand was for the sum of $3,000 but as it developed during the trial of the case that the defendant had not bought the lot on which the business under the concession was carried on until June 16, 1937, necessarily making the period of time almost twelve months less than that alleged in his petition, plaintiff voluntarily reduced the amount of his demand to the sum of $1,508.32.

The defendant, for answer, denied all the allegations of plaintiff's petition bearing reference to any oral agreement such as is therein set out and avers that the only contract it ever made with him is the written contract of lease of March 10, 1936, on which it relies, and that it never authorized any of its representatives to enter into any other contract with plaintiff save and except that one. Further answering, defendant avers that it acquired the lot of ground on which the business complained of by plaintiff as being conducted in violation of an agreement, on June 16, 1937. This date, it will be observed, is more than fifteen months after the contract of lease had been executed.

After trial in the court below, there was judgment rejecting all of the pleas and demands made by the plaintiff. In effect, the judgment recognized the written contract of lease as binding between the parties. Plaintiff has taken and perfected this appeal.

We take up for consideration first the plaintiff's attack on the contract of lease which is based on his allegation of fraud. The allegation is to the effect that he was fraudulently induced to enter into and sign the purported contract of lease on the representations made to him that the defendant would refrain from giving any concessions on its premises already owned or to be owned by it, if adjoining his, on which cold drinks, candies and cigarettes would be sold, which oral agreement it never did intend to fulfill. On an exception of vagueness which called on him to disclose who defendant's representative in that connection was, plaintiff averred in a supplemental petition that he was Mr. Abe Argrave.

Defendant, through its counsel, objected to the offer and introduction of oral testimony to prove any such agreement as was set out in the plaintiff's petition as the same would tend to contradict the terms of the written contract of lease, but the district judge properly admitted the proof offered under the plaintiff's allegation of fraud.

Plaintiff testifies that all his contacts and negotiations were had with Mr. Argrave, whom he invariably refers to as constituting a committee of one on behalf of the defendant. He mentions the failure of their efforts at a sale of the strip of land and states that he afterwards submitted to Mr. Argrave his proposition that defendant use his strip of land as it was and that they come to some agreement under which defendant would protect him in his business by not permitting anyone to open a competing business on its property as owned by them at the time or any it may thereafter own. It is rather significant that he states that Mr. Argrave "naturally" couldn't give him an answer but that he took the matter up with the Lodge and then reported to him that it was agreeable and that he would be protected. He says that he then told Mr. Argrave to draw up any lease they wanted, as long as they would stand back of their agreement.

To support his testimony on this point plaintiff produced as a witness, Mr. Dayton Braud, employed by him as a clerk in his drug store. This witness claims to have overheard a conversation between plaintiff and Argrave which took place behind the prescription counter in the drug store, but all he says is that he heard Mr. Rome, in the course of the conversation, "ask for a promise that the Lodge would not permit any concessions to operate against his business." He never did say that Mr. Argrave or anyone else representing the defendant gave any such promise or made any agreement to that effect. Mr. Braud signed the contract of lease as a witness and testifies that at the time Mr. Rome was about to sign it he remembers him reminding Mr. Argrave of the oral agreement, but his testimony in this respect is contradicted by the other witness who attested the document as well as by the notary public before whom it was executed.

Mr. Argrave admits that in his conversation with Mr. Rome something was said about the granting of a concession but all that he told him was that he would have to take the matter up with the Lodge. Whether the matter was ever taken up and disposed of by the Lodge does not appear from the minutes of the meetings. The minutes and the testimony of some of the witnesses show that the proposition relating to a sale of the strip of land was presented and declined and beyond that, the only action the Lodge appears to have taken officially was with regard to the lease, for the execution of which, the proper resolution was adopted.

Plaintiff gives the impression of being a man well versed in business matters. His own testimony shows that he ap-

preciated the fact that he was here dealing with a fraternal organization, an incorporated body, and that Mr. Argrave had no more authority as a member of that organization than to receive a proposition from him and submit it to the incorporated body. He admits that he was told by Mr. Argrave that he would have "to take it up with the Lodge," so that in itself was a warning sufficient that he could not rely on anything Mr. Argrave alone told him, even had the latter led him to hope that his proposition might be accepted, which by no means is shown by any of the testimony in the record. He is charged with the knowledge that he was dealing with a corporation and, as held in the case of T. P. Ranch v. Gueydan & Riley et al., 148 La. 455, 87 So. 234, 235, "it is the duty of every person entering into a contract with a corporation to see that the agents representing the corporation have been authorized to make the contract."

Finally, if it be assumed that plaintiff, at the time he signed the written contract of lease, did call Argrave's attention to the alleged oral agreement, the fact that he did not even ask that it be incorporated in the written document militates strongly against his charge of fraud. In his testimony he states that he told Argrave that if the Lodge would agree to the condition that he be protected against competitive business, "it could draw up the lease it wanted." In this suit he is attacking that lease as drawn because it provides no consideration. It strikes us therefore according to his present contention, that the vital, the most important matter to plaintiff in all this transaction was his proposition that he be protected from any competing business which it might be in the power of defendant to control, and why he should have signed a written contract without insisting that such a clause be incorporated therein is a matter which has not been explained. We conclude, as did the district judge, that it is because such an agreement was never consummated, and as it was not, it follows that plaintiff was not fraudulently induced to sign the contract of lease as charged in his petition.

We come now to consider the second ground of attack against the contract of lease which is based on an alleged failure of consideration. It is urged that a consideration of $1 per year for a period of ninety-nine years as rental for the strip of land herein involved is not serious enough to support the contract. The decision in the case of Murray v. Barnhart, 117 La. 1023, 42 So. 489, is relied on principally as authority. This is a case in which the provisions of Civil Code, Article 2464, requiring that the price in the contract of sale be serious and not out of all proportion with the value of the thing sold were extended to a contract involving an oil and gas lease of more than $100 in value. It was held that the nominal consideration of $1 as expressed in the contract, and which is considered sufficient in the common law, is looked upon by the civil law as not being a serious consideration and in fact as if no amount at all had been named. In other words, the consideration must be serious and not a mere formal arrangement to make it appear that a consideration is given and received. In our opinion, the provisions of Article 2464 of the Civil Code are sufficiently explicit in themselves when they prescribe that the price must be serious and that it "ought not to be out of all proportion with the value of the thing." These provisions naturally lead to an investigation of the value of the thing which is the object of the contract and the question presented in this case, on this point, is whether or not a rental consideration of $1 per year for a period of ninety-nine years is out of all proportion with the value of a strip of land fourteen inches in width by thirty feet in depth with lines gradually converging to a point, situated in the village of Gonzales.

We are inclined to believe that plaintiff places a large value on the strip of land because of the circumstance that has arisen by reason of it being occupied by defendant's building. We must bear in mind, however, that defendant, in erecting its building, encroached on plaintiff's property innocently and in utter good faith. It was more or less accidental that a mistake in the line separating the two properties was discovered. We have to consider its value as that of a naked strip of land of the dimensions mentioned. It is of a triangular shape and if it could be converted to a rectangle it would then consist of a strip of land approximately seven inches wide by thirty feet long. The proportionate rental for a vacant lot fifty feet wide by thirty feet in depth, based on the price of $1 per year for a strip only seven inches wide by the same depth, would be $85 annually. That, it seems to us, would be a

fair and rather substantial rental for a vacant lot in a village the size of Gonzales.

There is another thought which occurs to us in considering the value of this strip of land. It must be occupied partly at least by the wall of defendant's building and if instead of a frame building it had been constructed with stone or brick, or if defendant, at some time should decide to convert its building into one of brick or stone, plaintiff would have to yield his property rights to the extent of at least nine inches of his land so that the defendant could rest one-half of his wall thereon. Civil Code, Article 675. We mention this to show that after all, a strip of land such as we are here concerned with is of more or less inconsequential value and taken into consideration with the other observations we have made, it cannot be said that the consideration stipulated in the lease is out of all proportion to the value that it has.

█ This takes us now to the third ground of attack on the contract. Plaintiff contends that it contains a potestative condition which renders it void as under one of its clauses the defendant reserved the right to cancel it at its option. But we cannot so construe the clause on which plaintiff relies. All that that clause means is that if the lessee should fail to pay the rent when due, such failure on his part shall not give the lessor the right to cancel the lease until and unless he shall have made demand in writing and lessee shall then fail to pay within thirty days after said written date. There is nothing in the clause which would prevent the lessor from enforcing the full term of the lease, and as we read it, the option of cancellation, if any, for failure of payment after thirty days' written notice, is that of the plaintiff rather than defendant's. We find nothing in the contract which made any of its provisions dependent upon the will of either of the parties and hold that it is safe from attack on this ground.

Plaintiff's demand for damages is predicated entirely upon the alleged violation of what he contended was the collateral, contemporaneous, oral agreement under which he would be protected from competition in business by defendant's refraining from granting a concession to anyone to sell soft drinks, candies and cigarettes on its property. The district judge devoted a considerable part of his written reasons for judgment to the question of the admissibil-

ity of oral testimony to prove such an agreement, and finally held that such testimony was inadmissible. But the proof was already before him on the plea of fraud and he had already given it full weight and consideration and had held that it was not sufficient to show such an agreement as plaintiff contended he had with the defendant. The evidence being properly before the court already, it strikes us that the question of its admissibility, vel non, on some other issue, was purely academic and the ruling wholly unnecessary.

As did the district judge, we have held that on the testimony as found in the record, no such agreement has been shown or ever was consummated. If such an agreement never existed it is impossible for anyone to have sustained damages arising from it.

For the reasons herein stated, it is ordered that the judgment appealed from which rejected the plaintiff's demand be and it is hereby affirmed at his cost.

DORE, J., not participating.