LOTTINGER, Judge.
This is a suit by plaintiffs-appellants, to set aside a real estate lease entered into on April 18, 1960 by Tilton P. Thibodeaux as Lessor, and Sylvester J. Verret, as Lessee. The present plaintiffs are the heirs and/or assigns of the original Lessor, and the defendant is the assignee of the original Lessee. At the trial on the merits, the Lower Court dismissed plaintiffs’ action at plaintiffs’ costs, and from this judgment plaintiffs appealed.
The original plaintiffs in this matter were Novey Rogers Thibodeaux and Halley Thibodeaux. Novey Rogers Thibo-deaux sold her interest to Eula T. Thibo-deaux, Carmen Thibodeaux, Sherry Ann Thibodeaux and Raymond Thibodeaux who are substituted as parties in her place. Halley Thibodeaux died and his surviving spouse Rosie Ficaro Thibodeaux and heirs, Rose Marie Thibodeaux, Carol Thibo-deaux, and Anne Thibodeaux Daigle were substituted in his place. On motion to this court, Rosie Ficaro Thibodeaux, Anne Thi-bodeaux Daigle, Carol Thibodeaux and Rosie Marie Thibodeaux have moved to have this appeal dismissed insofar as they are concerned, and we do hereby grant this motion.
The sole defendant is Boeuf Land Company, Inc. who is the assignee of the original Lessee, Sylvester J. Verret.
The property in question is in Section 26, T 16 S, R 13 E, in St. Mary Parish. It is roughly triangular in shape, fronting 2,308 feet along the west bank of Bayou Boeuf. The apex is bisected by a parish road leading about 2,000 feet north to U.'S. Highway 90. The property between the parish road and Bayou Boeuf fronts 1,049 feet along the road, 2,308 feet along the Bayou Boeuf Channel, about 730 feet along its north line and some 1,150 feet on the south line. There is no dispute between the parties to the fact that the property was wooded at the time of the lease in question. There is a difference of opinion between the parties as to the elevation of the property at the time of the lease, but from the testimony we believe that the property fronting Bayou Boeuf was rather low though perhaps not classified as marsh or swamp land. Said property was leased in its unimproved condition on April 18, . 1960.
The lease in question was for a one year term from April 18, 1960 to April 17, 1961, with a rental payable in monthly installments of $350.00 per month in advance. Lessee was given the option to renew the lease for additional periods of one year each on the same terms and conditions, but no renewal beyond fifty years or April 18, 2010. The expert witnesses for plaintiffs and defendant were in general agreement that the best use of the property was for marine docking probably in connection with the offshore petroleum industry, and that the property had to be cleared, filled, and the bayou dredged before it could be used for this purpose.
Plaintiffs’ primary contention is that the lease should be set aside because no serious consideration was paid by defendant-lessee. The authority for plaintiffs’ argument is Civil Code Article 2464 which provides, as follows:
“The price of the sale must be certain, that is to say, fixed and determined by the parties.
*578 “It ought to consist of a sum of money, otherwise it would be considered as an exchange.
“It ought to be serious, that is to say, there should have been a serious and true agreement that it should be paid.

“It ought not to he out of all proportion with the value of the thing; for instance the sale of a plantation for a dollar coiild not be considered as a fair sale; it would he considered as a donation disguised.”

In connection with Civil Code Article 2464 plaintiff cites the line of jurisprudence beginning with Murray v. Barnhart, 117 La. 1023, 42 So. 489 (1906), which case cites Civil Code Article 2464 in setting aside a mineral lease. In this same vein, plaintiff cites Blanchard v. Haber, 166 La. 1014, 118 So. 117 (1928); Northeast Louisiana Detachment of Marine Corps League v. City of Monroe, 253 So.2d 107 (La.App.2d 1971), writs refused; Rome v. New River Lodge, No. 402 F. & A.M., 197 So. 174 (La.App.1st 1940); Myers v. Burke, 189 So. 482 (La.App.1st 1939) ; and Johnson v. Mansfield Hardwood Lumber Company, 143 F.Supp. 826 (U.S.D.C., W.D.La.1956). Plaintiff further cites an article by George M. Snell-ings, Jr. in 8 Tulane Law Review 178 at page 210, which states that the doctrine of “serious consideration” as developed by Murray v. Barnhart has been developed and used by the Louisiana courts as a judicial remedy to remedy the disproportionate bargaining power by the capitalistic syndicate as against the un-tutored landowner whose land it seeks to exploit where the remedy of lesion is unavailable. In summary, plaintiffs believe that the lease should be set aside because the rental paid for the land is not sufficient in proportion to its fair rental value. Without accepting or rejecting plaintiffs’ statement of law, we will proceed with a discussion of the evidence assuming for' the sake of argument that the law of Louisiana affords plaintiffs a remedy in this situation if borne out by the facts.
Two expert real estate appraisers testified in behalf of defendant that a fair rental was contracted between the parties at the signing of the lease in question. In substance their testimony was that there were few sales of land along Bayou Boeuf, but that they had taken the available sales and arrived at a fair market value for the property. Each then took what he considered a fair return on real estate and arrived at what he believed to be fair rental value. We are not satisfied with this testimony because there were few sales to use as comparables. There being little real estate for sale, it seems fair to assume that such property will command a higher rental than other types of real estate investments. The amount allowed as a fair return by the defendant’s experts seemed conservative when considered in this light.
The expert real estate appraiser who testified in behalf of plaintiffs used leases in the area and attempted to establish a fair rental value based on comparisons to other leases. This seems to us to be the better approach since there were many leases in the area to compare with, and it omitted the insertion of an appraiser’s opinion of a fair return on fair market value. However, plaintiffs’ expert used front footage along the water as his one most common factor between all of the leases in attempting to compare them. He added up both the water footage and the rental charges, arrived at a rental per foot of water frontage, and with this figure arrived at rental value for the property in question. We are not satisfied that sufficient consideration was given to whether the property in the other leases was cleared, its elevation, its size other than water frontage, and in general its condition at the time each lease was made with regard to its readiness for use for docking. It is clear to us that the property in question had to be cleared, filled, and the dock area dredged. We are not satisfied that all property under consideration was in that same condition.
Even though we could affirm the dismissal of this matter by the Lower *579 Court by reason of plaintiffs’ failure to prove their case, we would like to proceed another step. In using a comparable approach, nothing is as comparable to this property as it is to itself. By this we have reference to the history of this property contained in the record. It is certainly true that the determination of the fair market value or fair rental value of the property in question at the time this lease was entered into must be based on other leases shortly prior to the lease in question or immediately subsequent thereto. However, the lessee in this case did not ever make use of the property in question for its own purposes, but instead it sub-leased same under at least three different leases. The evidence shows that lessee spent $2,500.00 cutting some of the trees on the property and dredging a small portion of the water frontage. Lessee was paying lessors $350.00 per month in rental. It was some two and one-half years from the time of the lease in question until lessee was successful in getting its first sub-leasee for this property. Therefore, in addition to the $2,500.00 in improvements made by lessee, it paid out some $10,500.00 in rental to the lessor for a total of $13,000.00 before realizing any income on the property. Furthermore, according to our calculations, the original lease was in its seventh year before the lessee was able to get a substantial sub-lease on the property and at that time began to break even financially. That is, the lease was in the seventh year before total income exceeded total rental paid and other expenditures on the property. Certainly if the rental value of the property on April 18, 1960 was as substantial as plaintiffs believe, defendant would have been able to make substantial subleases immediately upon taking the lease in question. The fact that it took two and one-half years to get the first sub-lease, and the additional fact that it took some seven years to get a sub-lease which now is very lucrative leads us to the conclusion that the fair rental value of the property at the inception of the lease was not out of proportion to the rental paid. Furthermore, this conclusion seems correct when we consider that lessor received some $10,500.00 before the lessee received any rental at all.
Plaintiffs also urge that the lease is null because of a potestative condition contained therein. Plaintiffs cite Civil Code Articles 2024 and 2034 and cases dealing with potestative conditions. Plaintiffs argue that lessee has the unilateral right to renew this lease for fifty consecutive years with no corresponding right whatsoever allocated to the lessor. We think it is clear that this is not a potesta-tive condition inasmuch as each time lessee exercised an option to continue the lease for an additional year it was likewise obligated to pay the rental under the lease contract. Therefore, each option to continue the lease carried with it a corresponding obligation to pay the rent for another year.
Plaintiffs also urge that the Lower Court erred in not holding the subject lease void because of its illegality, it being contrary to Louisiana law and contra bonis mores. Plaintiffs argue that while Louisiana courts have approved options to renew for one or possibly two terms, there has never been approval for the option for fifty terms as in the case before us. They argue that the rationale of the cases approving the option to renew for one or two terms is that the rental paid is consideration for the renewal. They further argue that by no stretch of the imagination can it be deemed that the rental paid here is consideration for the unilateral right to renew for fifty consecutive terms. Other than the foregoing argument, plaintiffs cite no authority for their position. We believe that the options in question are valid in light of our determination that the rental was adequate according to fair rental value at the time the lease was entered into.
As previously stated we have granted the motion of Rosie Ficaro Thibodeaux, Anne Thibodeaux Daigle, Carol Thibodeaux and Rose Marie Thibodeaux to have this appeal *580 dismissed insofar as they are concerned. For the reasons herein assigned, the judgment of the Lower Court is affirmed, all costs of this appeal to be paid by all eight plaintiffs-appellants.
Judgment affirmed.