377 So.2d 1363 (1979)
JOHN JAY ESTHETIC SALON, INC.
v.
Frances WOODS and Neubie Culver.
No. 10433.
Court of Appeal of Louisiana, Fourth Circuit.
December 6, 1979.
*1364 Favret, Favret, Demarest & Russo, J. Paul Demarest and Anthony J. Russo, New Orleans, for plaintiff-appellee.
*1365 Richard J. Boutall, Metairie, for defendants-appellants.
Before LEMMON, GULOTTA and BEER, JJ.
LEMMON, Judge.
This is a suit for damages against two of plaintiff's former employees or business associates for breach of separate contracts. Both defendants have appealed from a judgment, rendered after a trial on the merits, which awarded the amount of liquidated damages stipulated in each contract.
Plaintiff was the corporate owner and operator of nine beauty salons employing 160 persons. Defendant Culver, an experienced hairdresser, had begun working for plaintiff in 1974 under an employment contract, but in January, 1977, at his request, he and plaintiff executed a lessor-lessee agreement, in which plaintiff leased shop space and equipment to Culver for the greater of a fixed fee or a percentage of sales. The contract contained the following provision regarding termination:
"TENTH: Lessee may terminate this agreement upon three day's written notice. Lessor may terminate this Agreement upon three day's written notice should the Lessee breach any of the representations or conditions contained in this Agreement. Lessee agrees not to solicit any of Lessor's customers and not to offer, hire, or in fact, employ or enter into any partnership, corporation, or other business relationship, directly or indirectly, with any of Lessor's present or future students, employees, or independent contractors for a period of two (2) years after termination of this Agreement. Lessee agrees to pay Lessor $25,000.00 as liquidated damages should Lessee violate the non-solicitation covenants of this Article." (Emphasis supplied)
Plaintiff first employed Mrs. Woods (the second defendant) in 1974, immediately after she had completed beautician's school and become licensed. In April, 1977 the parties executed an employment contract, in which plaintiff employed Mrs. Woods as a hair stylist with a salary based on a percentage of sales. The contract contained the following provisions regarding termination:
"4. Employer or Employee may terminate this Agreement, with or without cause, at any time.
* * * * * *
"6. Employee acknowledges that Employer has and will spend substantial time, effort and funds in the training of Employee including continued classes and on-the-job training to enhance Employee's skills. In consideration thereof and the terms of this Agreement, Employee agrees that if he terminates his employment for any reason, or if the Employer terminates his employment for just cause, then in these events Employee will not directly or indirectly in any capacity engage in a competitive business with the Employer for a period of two (2) years from the date his employment terminates, within a radius of twenty-five (25) miles from where he was employed. Moreover, Employee agrees that upon termination of his employment, he shall not solicit any of the Employer's customers and not offer to hire or, in fact, employ or enter into any partnership, corporation, or other business relationship, directly or indirectly, with any of Employer's students, employees, or independent contractors for a period of two (2) years after termination of employment. Employee agrees to pay the Employer $25,000.00 as liquidated damages should Employee violate any of the provisions of this Article 6." (Emphasis supplied)
Culver and Mrs. Woods worked in the same shop for three years. On June 11, 1977 Culver terminated his relationship with plaintiff and opened his own shop. Although the termination was amicable and was admittedly accomplished within the terms of the contract, plaintiff's president warned Culver not to pirate any employees.
*1366 On June 17, 1977 plaintiff's manager, having heard Mrs. Woods was leaving her employment, questioned her about her intentions. According to the manager, Mrs. Woods stated her intention to go to work for Culver "as long as she could get out of her contract and she could get into Neubie's insurance program," whereupon the manager instructed her to leave immediately since she was planning to leave later.
Mrs. Woods testified she moved immediately into Culver's shop and worked there while seeking other employment, but began working regularly for Culver about two weeks later. This suit followed.
In reasons for judgment the trial court found as a fact that an "agreement existed between defendant Woods and Culver while Woods was still in the employ of `plaintiff'" and that "both defendants sought legal counsel and advice in an attempt to evade the (contractual provision) prior to Frances Woods terminating her employment". The court further found Mrs. Woods had purposely brought about her termination in an effort to avoid the contractual terms.
On appeal defendants contend first that the pertinent provision in each contract was a non-competition agreement which is invalid as against the public policy stated in R.S. 23:921. The cited statute provides:
"No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years."
R.S. 23:921 might perhaps invalidate the non-competition provision in Mrs. Woods' contract (unless the exception for training or advertising were proved applicable). However, Mrs. Woods was cast for damages, not for violating the non-competition provision of her contract, but for violating the non-solicitation provision.
An agreement not to engage in competition with the employer is vastly different from an agreement not to solicit the employer's customers or employees or to engage in a business relationship with the employees or contractors. Martin-Parry Corp. v. New Orleans Fire Detection Serv., 221 La. 677, 60 So.2d 83 (1952). In the Martin-Parry case the Supreme Court, while reiterating the invalidity of the non-competition agreement, upheld the validity of an agreement not to solicit the employer's employees. This type of agreement, relating to solicitation of the employer's customers, was also held valid in Delta Finance Co. of La. v. Graves, 180 So.2d 85 (La.App. 2nd Cir. 1965) and in Bookkeepers Business Serv., Inc. v. Davis, 208 So.2d 1 (La.App. 4th Cir. 1968), but was held invalid in Orkin Exterminating Co. v. Broussard, 346 So.2d 1274 (La.App. 3rd Cir. 1977), cert. den., La., 350 So.2d 902. See also Comment, Agreements Not to Compete, 33 La.L.Rev. 94, 100 (1972).
We hold that the agreement not to solicit the employees of the employer or to engage in a business relationship with them is not within the prohibition of R.S. 23:921 and is therefore valid and enforceable.
Mrs. Woods next contends that the pertinent contractual provision is not applicable because she was not terminated for cause.
*1367 Under paragraph 4 Mrs. Woods' contract could be terminated by either party, with or without cause. The non-competition portion of the contract, by its terms, was applicable only when the employee terminated the contract or when the employer did so for cause. However, there is no such limitation on the non-solicitation portion of the contract. Therefore, we hold the non-solicitation agreement applicable, whether or not Mrs. Woods was terminated for cause, and thus do not reach the question of whether just cause existed.
Defendants further argue that there was no testimony of any offer by Culver to employ Mrs. Woods until after she was terminated on June 17, so that neither was an employee of plaintiff at the time they agreed to establish a business relationship.
While Mrs. Woods admitted that she and Culver discussed an employment relationship during her tenure with plaintiff (and apparently during Culver's tenure) and even sought legal advice on the validity of the non-solicitation provision after Culver opened his business, she insisted she did not intend to leave plaintiff's employ unless and until she determined the contract was not legally binding. She also admitted, however, that Culver had been advised by his attorney that his contract was binding and enforceable before the incident which led to her termination.
The trial court's determination that defendants reached an agreement as to establishing a business relationship while at least one was still employed by plaintiff is essentially based on circumstantial evidence and on a credibility evaluation rejecting defendants' contrary testimony. On this record we cannot say that such a conclusion is so improbable as to be manifestly erroneous, and we affirm the decision that defendants contracted with each other in violation of the terms of their respective contracts and that each is liable for damages for breach of the particular contract.
Nevertheless, we decline to award the so-called liquidated damages stipulated in each contract.
It is conceded Culver legally terminated his contract, and plaintiff cannot recover damages related to the loss of his services. Thus, the only damage sustained by plaintiff was the loss of one licensed hair dresser with three years experience and some additional training provided by the corporation. The value of this loss appears to be the amount of net income that would have been earned during a reasonable time necessary to replace a licensed hair dresser with three years experience and perhaps the cost of locating and providing minimum training for the replacement.
True liquidated damages represent an amount, arrived at in a good faith effort by the parties at the time of contracting, to reasonably estimate the monetary loss which will probably be sustained in the event of a breach. In the two contracts in the present case, however, one cannot reasonably conclude the contracting parties reasonably contemplated that a breach by the employee of the clause prohibiting solicitation of or association with another employee would cause the employer damages to the extent of $25,000.00. That figure is so unrealistic and unreasonable that it cannot be considered a good faith pre-estimate of probable damages, but must be deemed a penalty clause, imposed by an employer with vastly superior bargaining power, as a deterrent to prevent a breach. McCormick, Damages, Ch. 24, §§ 146, 149 (1935); 22 Am.Jur.2d, Damages § 212 et seq. (1965); 61 A.L.R.2d 1019 (1958). No matter how clearly such penalty clauses are written, courts as a matter of public policy should decline to enforce an agreement which clearly is not one for true liquidated damages.[1]
In the present case the promise to pay $25,000.00 is simply not reasonably related *1368 to the probable actual damages within the contemplation of the parties at the time of contracting. Moreover, the promise was not supported by serious consideration, as required by C.C. art. 2464, in that the consideration was "out of all proportion with the value of the thing" which induced the promise to pay.[2]
Nevertheless, some damages are due by defendants because of their breaches, and the matter therefore must be remanded for a determination of the amount of actual damages incurred by plaintiff, as discussed above.
Accordingly, the judgment of the trial court finding a breach of contract is affirmed. The judgment fixing the amount of the award is set aside, and the matter is remanded to the trial court for evidence by all sides as to actual damages.
AFFIRMED IN PART, SET ASIDE AND REMANDED IN PART.
BEER, J., concurs and assigns reasons.
BEER, Judge, concurring.
I respectfully concur in the result reached by Judge Lemmon's majority opinion.
However, I do not agree with that portion of the opinion which states:
"No matter how clearly such penalty clauses are written, courts as a matter of public policy should decline to enforce an agreement which clearly is not one for true liquidated damages."
In my view, equal parties, bargaining at arm's length, have an absolute right to agree to a liquidated damage figure that is not, necessarily, related in any way to "true liquidated damages." Indeed, I feel that any implicit judicial prohibition of same (by dicta or otherwise) constitutes an unacceptable impediment.
Parties who confect a contract between themselves which contemplates a breach of that contractual clause which prohibits solicitation of another employee should not be restricted to a range of stipulated damages that are never greater than a "pre-estimate of probable damages."
Even though I agree that the stipulated figure of $25,000 is unacceptable in light of the facts of this particular case, I do not agree with the majority's implicit prohibition against a liquidated damage figure that exceedseven markedlya good faith pre-estimate of probable actual damages.
NOTES
[1] This is the same public policy which underlies the positive law of usury. The desirable policy of freedom of contract must be balanced with the consideration that human beings may frequently be induced to make promises which are completely out of line with the value of the thing which induced the promise, especially when situated in an unfavorable bargaining position. Courts must carefully scrutinize such promises, particularly when related to the loan of money or the terms of employment.
[2] C.C. art. 2464 has special reference to the price of a sale, but the civil law principle that consideration must be in proportion to the value of the thing is not peculiar to sales. Murray v. Barnhart, 117 La. 1023, 42 So. 489 (1906).