435 So.2d 1051 (1983)
JOHN JAY ESTHETIC SALON, INC.
v.
Frances WOODS and Neubie Culver.
No. 5-117.
Court of Appeal of Louisiana, Fifth Circuit.
June 6, 1983.
Writ Denied September 30, 1983.
Anthony J. Russo, New Orleans, for plaintiff-appellee.
Richard J. Boutall, Metairie, for defendants-appellants.
Before CHEHARDY, BOWES and GRISBAUM, JJ.
BOWES, Judge.
This case was remanded to us by the Supreme Court, on writs taken by plaintiff, "to consider judgment of the trial court on the merits." It was the original opinion of this Court considering the transcript and the entire record, including correspondence from the trial judge, copies of the minute entries, and dialogue between the court and plaintiff's counsel on the morning of November 26, 1980, that the defendant justifiably relied on a written stay order; and that such could not, and had not, been "impliedly rescinded."
The matter was originally tried and appealed to the Fourth Circuit, on a claim *1052 that defendants violated certain noncompetitive and "no solicitation" clauses in their employment contracts. In deciding that each defendant (Woods and Culver) was liable for damages for breach of contract, the Court declined the award of $25,000.00 in damages, specified in the contract to be liquidated damages, stating:
True liquidated damages represent an amount, arrived at in a good faith effort by the parties at the time of contracting, to reasonably estimate the monetary loss which will probably be sustained in the event of a breach. In the two contracts in the present case, however, one cannot reasonably conclude the contracting parties reasonably contemplated that a breach by the employee of the clause prohibiting solicitation of or association with another employee would cause the employer damages to the extent of $25,000.00. That figure is so unrealistic and unreasonable that it cannot be considered a good faith pre-estimate of probable damages, but must be deemed a penalty clause, imposed by an employer with vastly superior bargaining power, as a deterrent to prevent a breach....
No matter how clearly such penalty clauses are written, courts as a matter of public policy should decline to enforce an agreement which clearly is not one for true liquidated damages. John Jay Esthetic Salon, Inc. v. Woods, 377 So.2d 1363 ([La.App.] 4th Circuit 1979).
The court, considering the measure of damages, concluded:
Thus, the only damage sustained by plaintiff was the loss of one licensed hair dresser with three years experience and some additional training provided by the corporation. The value of this loss appears to be the amount of net income that would have been earned during a reasonable time necessary to replace a licensed hair dresser with three years experience and perhaps the cost of locating and providing minimum training for the replacement.
(The Court here found that the portion of the contracts of both defendants Culver and Woods relating to solicitation of Jay's customers was valid and enforceable. Woods and Culver had violated this agreement, as proven in the first trial. However, the measure of damages was limited to the loss of profits occasioned by Woods' departure since Culver had legally terminated his actual employment contract.)
In view of the clear language of the Fourth Circuit quoted hereinabove (in the first appeal), we are puzzled at the amount of damages awarded in the present case. After a careful examination of the entire record, we are obliged to find that the trial judge was manifestly erroneous in granting damages based on the evidence presented at trial. We reverse that portion of the judgment awarding damages for loss of income, but affirm the $3,600.00 award for training costs.
Our original opinion in this case (at 422 So.2d 456 (La.App. 4th Cir.1982)) set out details of the chain of events culminating in the trial court having rendered judgment in favor of plaintiff for $91,872.00, plus $3,600 in "training" costs. Essentially, the trial was conducted only partially with benefit of the presence of defendant's counsel and that being during the early stages of the trial. Very little defense was presented to plaintiff's evidence concerning damages, loss of income or training expense because, after defense counsel had only partially completed his cross-examination of Mr. LeBlanc, the trial was recessed because the trial judge, understandably, had to keep an appointment with his doctor. When the trial resumed several months later, on November 26, the great misunderstanding occurred concerning the stay order. At that time, defense counsel left the courtroom to seek supervisory writs while the court chose to continue with the trial (after refusing to stay the proceedings or grant a continuance).
Plaintiff's chief witness at the trial was Rodney LeBlanc, an accountant whose firm handled the books for John Jay Esthetic Salons, Inc.
Testimony of Mr. LeBlanc, brought out during the limited cross-examination that *1053 defense counsel did have, clearly reveals (partially through his own admission) that the method used by LeBlanc to compute damages herein is erroneous. Mr. LeBlanc stated that plaintiff's damages, or loss of profit attributable to Mrs. Woods departure, amounted to $91,872.00, arriving at that figure in the following manner:
Initially, he computed the gross revenue of the salon where the defendants were assigned, for the years 1975-1977, a period during which both were employed. He concluded that for that period revenue increased by roughly 33.5% each year. Then, for the fiscal year beginning in July 1977 (when defendant Woods was no longer employed by Jay) through 1980, Mr. LeBlanc computed a decrease in income of 15%. The gross figures for those three years (1978-80) was then "projected" by the witness at a steady 33.5% to claim a loss of $990,500 (the amount the witness claimed the salon would have earned at the steady 33.5% increase). That figure was set off against the actual amount of sales, and further against a 52% actual costs amount, to total $235,200 in lost gross profits for 1978-80.
Then, Mr. LeBlanc assigned 36% of that loss to the absence of defendant Woods. He based that percentage on a comparison of the relative earnings of Woods and Culver, the other defendant. Essentially, he arbitrarily decided that Culver, more experienced and with a greater following of clientele, would have earned almost twice as much income as Woods. Therefore, 64% of the entire loss of profits was assessed against Culver; and the remaining 36% assessed against Woods. 100% of the total lost profits from the Clearview Salon for the three-year period was attributable, in Mr. LeBlanc's unverified testimony, to Woods and Culver. The judgment of $91,872.00 represented Woods' "assigned" portion (36%) of that loss. We note here that no earnings records of Mrs. Woods or Mr. Culver were ever introduced to support this method of allotted percentages. LeBlanc testified, partially, as follows:
THE WITNESS:
Her and Mr. Culver, I couldn't attribute this whole loss of Two Hundred Thirty-five Thousand Two Hundred to just her, because she was not the only one that left. Mr. Culver left at the same time; so
MR. BOUTALL:
Q. So these figures are false. They're based on two persons
THE COURT:
Wait, let him finish, Mr. Boutall.
THE WITNESS:
That exactly. That's right. So why jeopardize your client for Two Hundred and Thirty-five Thousand Two Hundred when there were two people? ...
MR. BOUTALL:
Q. You adjusted these for both employees
A. I adjusted it for known facts.
Q. What facts?
A. The facts were that two people left, one made higher earnings than the other, so I took that into consideration and based on the two people's earnings, that is one gross figure, Miss Woods represented thirty-six per cent of the gross earnings and Mr. Culver represented sixty-four per cent; so based on that percentage of known facts, I allocated of the percentage of lost sales and net profit, only thirty-six per cent.
Q. But doesn't thirty-six and sixty-four add up to a hundred per cent?
A. If that was attributableit was the reason that those two people left was the reason that we experienced those losses.
Q. How do you know that?
A. It was stated in this case that they left.
A. Who stated that? Who stated that all loss is attributable to those two leaving? [emphasis ours]
A. Even if it wasn't, why did this salonwait a minute. Why did this salon not show a steady increase as all the other salons did?
To say that the figure designated by plaintiff, and the method by which it was computed, is speculative would be an *1054 understatement. To begin with, gross sales at salon in question as at any such salon, consist not only of services performed by hairdressers but also of sales of beauty products and other services (there was at least one manicurist, for example, at the salon). According to the deposition of Mrs. Woods in the earlier proceeding, there were at least two other hairdressers in the store at the time she left. There is no information as to exactly how many hairdressers were employed at the store at any given period of time. Yet Mr. LeBlanc arbitrarily assigned 36% of the lost profits to Mrs. Woods, and 64% to Mr. Culver, for a total of 100%. The defendants were held solely liable for the entire loss of profit for a three-year period. That reasoning is indeed questionable; yet, according to the testimony, it is precisely the basis for Mr. LeBlanc's figures (Transcript p. 52).
Despite the admissions by Mr. LeBlanc that he did not know any other employees at the salon, or their positions; that he had no idea who was actually making what amount of money; that he had no idea what anyone employed by John Jay earned, and that the figures were based on two people (Transcript p. 50), he staunchly clung to his estimates. An additional problem inherent in the accounting method used is that the (so-called) loss of profits was a figure "projected" by Mr. LeBlanc and based not on actual losses but on an "expected" increase in business. We cannot accept such speculative numbers when considering damages for breach of contract. Damages in breach of contract cases must be proven with reasonable certainty. A claim for loss of profits will not be supported by mere estimates of loss. See F & F Transfer, Inc. v. Tardo, 425 So.2d 874 (La.App. 4th Cir.1983). Loss of profit awards may not rest on speculation or conjecture unless direct evidence is not available to establish this element of damage. Al Smith's Plumbing v. River Crest, Inc., 365 So.2d 1122 (La.App. 4th Cir.1978). The latter case discussed damages for lost profits in a contract situation, where records which should have shown actual losses were available but not produced by the plaintiff.
This Court feels that more detailed records could and should have been produced to show a reasonable foundation for damages in the present case, i.e., actual pecuniary loss caused by the departure of Mrs. Woods. Documents verifying such elements as the actual monetary loss at the Clearview Salon, operating without the services of Mrs. Woods, the number of hairdressers at the salon and their sales for the periods before and after Mrs. Woods left; and Mrs. Woods' income tax records for the years in question, are some of the indicators which were certainly available to plaintiff by subpoena, or in his own records. That counsel chose not to introduce any such evidence does not allow us to ignore the rule requiring a plaintiff to establish proof of his demand with at least sufficient evidence of the particular loss he claims.
Mr. LeBlanc testified from his charts, and from Mr. Jay's income tax records, which reflected plaintiff's entire income and did not specify it salon by salon. We are unable to believe that such information was not available. The witness did give a figure of a 15% decrease in overall sales; however, the basis of his figure for lost profits was a projected increase based on the prior three years. Actual losses could have been established with much more reasonable certainty. There was absolutely no proof that defendants were answerable for any substantial portion of any loss, if indeed, there was any at all suffered by the plaintiff. It is beyond credulity that defendants were responsible for the entire loss. There is nothing in the record which would permit this Court to assess a percentage of loss against the defendants.
Therefore, we are obliged to annul that portion of the trial court's judgment awarding damages for loss of profits in the amount of $91,872.00.
However, we find that plaintiff's income tax records for the years in question did verify to a reasonable degree the amounts required to train an employee. While we question the necessity of the three-year time period used (since there was *1055 no showing that plaintiff could not and did not hire experienced hairdressers to replace Mrs. Woods), we find from the record that plaintiff maintained a standard of education for his employees by which all were continuously being instructed. The tax forms show acceptable (and specific) sums expended, and Mr. LeBlanc's testimony satisfactorily explained those sums. Therefore, we affirm that portion of the trial court's judgment awarding plaintiff $3,600.00 for training costs for a replacement.
AFFIRMED IN PART, ANNULLED IN PART, AND RENDERED.