480 So.2d 1034 (1985)
URS RENTAL SERVICES COMPANY
v.
Gene L. DONGIEUX.
No. 85-CA-398.
Court of Appeal of Louisiana, Fifth Circuit.
December 16, 1985.
*1035 Eugene R. Preaus, and Mark B. Meyers, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for plaintiff/appellant.
William H. Reinhardt, Jr. and Kevin W. Kern, Post, Reinhardt & Rougelot, Metairie, for defendant/appellee.
Before BOWES, GRISBAUM, and DUFRESNE, JJ.
BOWES, Judge.
This appeal is taken from a judgment of the district court denying plaintiff URS *1036 Rental Services Company's petition for specific performance and for damages arising out of a lease with defendant, Dr. Gene L. Dongieux. For the reasons to follow, that judgment is affirmed.
Caillou Rental Service, Inc. (referred to hereinafter as "Caillou") and Dr. Gene Dongieux entered into a lease agreement on April 20, 1981, whereby Caillou agreed to lease office space in a building owned by Dr. Dongieux. The lease was for a term of five years and provided that the premises were to be used only as administrative offices for an oil service company. Testimony of Dr. Dongieux, the only original party to the lease who testified, established that such limitation was made in order to facilitate a parking problem which the landlord had experienced with a previous tenant.[1] Caillou undertook some $85,000 worth of leasehold improvements, which, under the lease, would revert to the owner at the expiration of the term. These improvements included a specifically-designed computer room, special alarm system, and a special air conditioning system for the computer.
Caillou was apparently acquired in an exchange of stock by URS Corporation in November, 1981, and became a whollyowned subsidiary of URS Corporation.
In May, 1983, according to a certificate of the Secretary of State, Caillou merged into Advanced Energy Resources, Inc. The certificate of merger dated May 3, 1983, provided:
The name of the surviving corporation of the merger is Advanced Engery Resources, Inc., which shall herewith be changed to URS Rental Services Company, a Delaware corporation.
On May 12, 1983, Richard Davison, a vice-president of Caillou and of URS Corporation, met with Dr. Dongieux to inform the doctor that the successor corporation, URS Rental Services, would move its office from New Orleans to Houston. The leasehold improvements and the company computer would be left, and, although the company would move, it was not its intent to abandon the premises. URS was interested in subleasing the property. Dr Dongieux inquired as to whether there was some interest in breaking the lease; Davison replied that some concession would have to be made concerning the improvements. No actual offer or decision was made at that time.
On June, 1983, Davison wrote to Dongieux and expressly reiterated the desire to sublease, adding: "If you have no interest, we intend to use the services of Latter & Blum to find a suitable sub-lessee."
In July, 1983, another letter was written by URS' counsel to Dr. Dongieux's attorney, seeking what the trial court characterized as a "blanket approval" to sublease the offices. No agreement having been reached between the parties, plaintiff URS filed suit in September, 1983, for specific performance to require defendant to grant permission for a sublease, and for damages.
Defendant filed a pleading, which is essentially a reconventional demand, for possession of the property in question. The matters were tried on October 15, 1984, and judgment rendered denying plaintiff's demand for specific performance and damages, and denying plaintiff's demand for attorney fees.
The record indicates that on August 1, 1984, the defendant either granted approval for a sublease, or appointed a real estate agent to obtain a sublessee. While this latter point will be discussed more fully *1037 below, we note at this point, by the time of trial, that portion of the action demanding specific performance had become moot, and so was properly dismissed by the court.
Vital to the remaining issues is the following clause in the original lease:
Lessee is not permitted to rent or sublet or grant use of posssession of the premises to any other party without the written consent of the Lessor, which shall not be unreasonably denied, and then only in accordance with the terms of this lease. Should Lessee desire to sublet, permission must be obtained in writing through Lessor or Agent and such sub-lease shall be handled by Lessor's Agent at expense of the herein Lessee.
Plaintiff claims that defendant's refusal to grant permission to sublease, or to name an agent to handle the matter, was an unreasonable denial of consent, and that defendant is liable for the expenses incurred in maintaining the leased property, and for loss of profit which plaintiff would have realized on a sublease.
The trial judge correctly found that plaintiff had not sought to have the defendant name an agent for the sublease, nor did plaintiff submit a prospective sublessee to defendant for approval; that the defendant lessor was well within the lease agreement to name his own agent, had no duty to seek a suitable sublessee, and was not required to give a blanket prior-written consent to plaintiff's agent to begin finding a sublessee. Therefore, the court reasoned that defendant had not unreasonably denied plaintiff's attempt to obtain a sublease.
We agree that prior to the filing of the petition, plaintiff had not complied with the terms of the lease, that defendant did not refuse to abide by the stated terms, and therefore defendant did not act unreasonably. Plaintiff is not entitled to damages for losses sustained prior to filing the demand.
However, once suit for specific performance was filed, plaintiff was clearly requesting that defendant name an agent in order to meet the requirement that the lessor's agent handle any sublease. Once this was done, it was incumbent upon defendant to obtain such agent, or to show good reason why he failed or refused to do so. The clause as written operates to deny the lessee the opportunity to sublease if the lessor does not nominate his agent for the transaction. Such appointment then, in the terms of the agreement itself, shall not be unreasonably denied.
There is some confusion in the beginning of the record as to the corporate identity of the successor corporation, and some question as to when the defendant became fairly assured, or reasonably certain, that URS Rental Services was the corporate successor to Caillou, the original lessee. However, this issue was decided in a judgment on exceptions of lack of procedural capacity and no right of action filed by the defendant. Whether Dongieux can be charged with constructive knowledge of the identity of URS, due to his acceptance of rental checks from URS, is another aspect of this question. From the evidence presented, we can see no other reason why Dongieux might have refused to deal with the plaintiffs and name his agent.
It is not necessary for us to resolve the issue of whether or not Dongieux knew the status of URS, and therefore might have unreasonably denied URS the right to sublease, because we find that URS did not prove the damages sustained with sufficient certainty.
The lease limits the use of the property for an oil service company's administrative office. Such limitation is unambiguous. Legal agreements have the effect of law upon the parties and none but the parties can modify or abrogate them. Courts are obliged to give legal effect according to the true intent of the parties; intent is determined by the words of the contract when these are clear and explicit and lead to no absurd consequences. La. C.C. Art. 1945.[2]
*1038 Therefore, unless both lessee and lessor agreed otherwise, a sublease was limited under the terms and conditions of the original lease  that is, the premises are restricted to be used as specified, for an oil service company.
We know that a contract is the law between the parties and that they are bound by their agreements regardless of harmful consequences, provided the agreement is not contra bones mores or in violation of some prohibitory law. However, ... the fact that informed and experienced persons do not usually and customarily bind themselves to unjust and unreasonable obligations is a serious factor that must be taken into consideration in determining that question. Texaco v. Vermillion Parish School Board, [244 La. 408] 152 So.2d 541 (La.1962) [citations omitted]
The lease itself may expressly provide the purpose for which the premises are leased and for restrictions on the use of the leased premises.... In his occupancy of the property the tenant is obligated not to use the premises for a purpose inconsistent with that contemplated by the parties at the time they confected the lease. Tullier v. Tanson Enterprise, Inc., 367 So.2d 773 (La.1979).
Keeping these principles in mind, we do not find that the present interpretation of the intent of the parties leads to absurd consequences. The lease agreement was signed by two experienced businessmen, and there is no evidence that either was in a disadvantageous bargaining position.
At trial, Mr. Roy Schwartz, plaintiff's appraiser, testified that if the sublease were limited to an oil field service company, then he had no opinion as to how long it would take to obtain a sublessee. Both he and Mr. Wiegand, defendant's expert, testified that it would take "forever" to find a sublessee in the oil field business. We take this to mean that it would be difficult finding such a potential sublessee. In any case, no time period in which it would take to find a proper sublessee was established.
The expert testimony does not provide a basis for damages. There was no evidence that plaintiff received and lost any offer to sublease at all, from which damages might have been calculated.
Damages in contract cases must be proven with reasonable certainty. A claim for loss of profits will not be supported by mere estimates of loss, and such awards may not rest on speculation or conjecture unless direct evidence is not available to establish the damages. John Jay Esthetic Salon, Inc. v. Woods, 435 So.2d 1051 (La.App. 5th Cir.1983). Under the facts of the present case, we find the evidence insufficient to sustain an award for damages.
Defendant, who answered the appeal, avers that his petition for possession was erroneously "denied", or dismissed, citing La.C.C. Arts. 2711 and 2729 as authority.[3] Defendant also argues that plaintiff's filing of a lawsuit was a breach of plaintiff's obligation to perform in good faith, and that the court should therefore have granted possession to the defendant. Given the nature of the original lawsuit, we find this latter argument difficult to follow. As to defendant's petition itself, we note that it requests a cancellation of the lease as incident to being granted possession.
*1039 The dissolution of a lease is subject to judicial control and will be decreed only when the lessor is clearly entitled to it. Tullier, supra; Wilson v. Cost + Plus of Vivian, Inc., 375 So.2d 683 (La.App.2nd Cir.1979).
The trial court's finding that plaintiff did not abandon the premises since it continues to pay rent and utilities, and because the valuable computer still occupies the premises, is more than substantial by the evidence. There was no proof that URS did, or intended to, abandon the property. Defendant's reliance on the codal articles is misplaced. There was no evidence that plaintiff failed to fulfill its obligations under the lease so as to warrant dissolution under article 2729.
Further, article 2711 discusses "another use" of the property which results in damage to the lessor. No such damages were proven. We conclude that there was no abuse of discretion by the trial court in refusing dissolution of the lease. It follows that defendant is not entitled to attorney fees. See National Roofing & Siding Co. v. Giase, 434 So.2d 85 (La.App. 5th Cir.1982).
For the foregoing reasons, the judgment appealed from is affirmed. Each party is taxed its own costs on appeal.
AFFIRMED
NOTES
[1] From Dr. Dongieux's testimony:

Q. So your concern was parking and traffic?
A. Yes.
Q. Is that the reason why you provided in the lease that it would be limited to an oil service company executive office or administrative office?
A. Yes, I was warning the tenant to not effect my livelihood or my practice. That is the way I made a living, in that people pay me $2,000.00, $3,000.00 $4,000.00 to straightening [sic] teeth and they don't want to park on the street or walk in the rain, so there is accommodation there.
Q. And that was discussed with Mr. Segrest at the time the lease was entered into?
A. Yes, it was.
[2] Art. 1945 has been repealed effective January 1985, subsequent to the proceedings herein. It has been replaced by Articles 2045 and 2046, which are to the same effect.
[3] Art. 2711. Use of thing leased

Art. 2711. If the lessee makes another use of the thing than that for which it was intended, and if any loss is thereby sustained by the lessor, the latter may obtain the dissolution of the lease.
The lessee, in that case, shall be bound to pay the rent, until the thing is again leased out; and the lessee is also liable for all the losses which the owner may have sustained through his misconduct.
Art. 2729. Failure of parties to fulfill obligations
Art. 2729. The neglect of the lessor or lessee to fulfill his engagements, may also give cause for a dissolution of the lease, in the manner expressed concerning contracts in general, except that the judge can not order any delay of the dissolution.