# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 17-920
### consolidated with 17-827


**PROFESSIONAL FLUID SERVICES, LLC**

**VERSUS**

**NORSK BRONNSERVICE AS, ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2015-3159
HONORABLE DAVID M. SMITH, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

### PHYLLIS M. KEATY
### JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Phyllis M. Keaty, John E. Conery, and Van H. Kyzar, Judges.


**Conery, J., dissents and assigns reasons.**


**AFFIRMED. WRIT DENIED.**

**Michael J. Remondet, Jr.**
**Jeansonne & Remondet**
**Post Office Box 91530**
**Lafayette, Louisiana 70509**
**(337) 237-4370**
**Counsel for Plaintiff/Appellee:**
     **Professional Fluid Services, LLC**

**David J. Schexnaydre**
**Schexnaydre Law Firm, LLC**
**2895 Highway 90, Suite 212**
**Mandeville, Louisiana 70471**
**(985) 235-1089**
**Counsel for Defendants/Appellants:**
     **Norsk Bronnservice AS**
     **NBS Solutions AS**

**KEATY, Judge.**

This is a breach of contract case. The parties filed opposing motions for summary judgment concerning a liquidated damages clause in a contract between them. The trial court denied the defendants' motion for summary judgment, granted partial summary judgment in favor of the plaintiff, struck the liquidated damage clause from the contract, and dismissed the defendants' counterclaim. The defendants took an appeal from the judgment granting the plaintiff's motion. For the following reasons, we affirm.[1]

## FACTS AND PROCEDURAL HISTORY

Plaintiff, Professional Fluid Services, LLC (PFS), is a Louisiana corporation that develops and manufactures products used in the oil industry. In November 2011, PFS entered into an Exclusive Marketing Agreement (2011 EMA) with Norsk Bronnservice AS (NBS), a Norwegian corporation, to market PFS's products in the Russian Federation.[2] On February 10, 2012, PFS signed a second EMA (2012 EMA) with NBS, which unlike the 2011 EMA, included a liquidated damages clause.[3]

By email dated June 3, 2015, PFS terminated the EMAs with NBS citing "unresolvable business disputes." In response, NBS sent PFS an invoice seeking $663,267.97 in liquidated damages that it calculated under Section 7(d) of the 2012 EMA. Several weeks later, PFS filed suit against NBS, seeking a declaratory judgment plus damages based upon NBS's breach of the 2011 EMA. More

---

[1] The defendants also sought writs from the denial of its motion for summary judgment, which were assigned docket number 17-827. Upon motion of the plaintiff, this court consolidated the appeal and the writ.

[2] The Russian Federation was formerly known as the Soviet Union.

[3] On that same date, PFS signed a separate EMA with NBS Solutions AS (NSA), another Norwegian corporation, that was virtually identical to the 2012 EMA it signed with NBS except that it named NSA as the distributor. For simplicity, we will collectively refer to both contracts as "the 2012 EMAs." In addition, because the parties generally treat NBS and NSA as one entity, we will do the same and refer to both collectively as "NBS" for purposes of this appeal.

specifically, PFS asserted that NBS breached the 2011 EMA by failing to pre-pay orders, maintain inventory, and sell any PFS products in 2015. PFS sought injunctive relief to prevent NBS from carrying out its written threat to defame PFS to its worldwide business partners. Finally, PFS requested that a declaratory judgment be issued declaring the 2012 EMAs it purportedly signed with NBS invalid.

NBS filed an answer and counterclaim against PFS, seeking an award of damages from PFS for its failure to perform under the contracts. In March 2017, NBS filed a motion for summary judgment, asserting that because it had not "materially breached" the 2012 EMAs, PFS's cancellation of the agreements was improper, thereby triggering Section 7(d) of those agreements and entitling NBS to the liquidated damages provided for therein. As such, NBS sought summary judgment on its counterclaim, along with dismissal of all PFS's claims against it. Thereafter, PFS filed a motion for partial summary judgment, seeking to have the trial court declare the liquidated damages clause incalculable as written, and, thus, unenforceable. In its brief to the trial court and to this court on appeal, PFS stated that "for the sake of argument only," it will assume that "the February 2012 Agreements are valid."[4]

After a hearing, the trial court found as a matter of law that "Paragraph 7(d) of the 2012 [EMAs] is ambiguous." By judgment dated August 1, 2017, the trial court granted PFS's motion for partial summary judgment, severed and struck Paragraph 7(d) from the 2012 EMAs, and dismissed NBS's counterclaim that was based on the liquidated damages clause; the judgment was designated as final for

---

[4] We will, likewise, assume that the 2012 EMAs are valid; however, we specifically make no finding as to authenticity and/or validity of those agreements.

purposes of appeal.[5] By separate judgment, the trial court denied NBS's motion for summary judgment after finding that genuine issues of material fact remained.

NBS appealed[6] and is now before this court asserting the following assignments of error:

1. The trial court was legally incorrect in finding clause 7(d) of the 2012 Agreements ambiguous as a matter of law simply because common business terms in the clause were not specifically defined, and further erred in failing to address the available extrinsic evidence to determine the intent of the parties so as to overcome any alleged ambiguity.

2. The trial court erred in striking the entirety of 7(d) from the 2012 Agreements. Striking a clause deemed ambiguous was not the proper remedy because a clause deemed ambiguous as a matter of law requires the trier of fact to address extrinsic evidence to determine the intent of the parties, or to instruct the trier of fact to simply construe the ambiguity against the drafter, not strike it altogether.

3. In the alternative, the trial court erred in striking the entirety of clause 7(d) from the 2012 Agreements because, at best, only the multiplier portion of the clause could be legally deemed ambiguous (an issue that Norsk/NBS conceded for purposes of the Motion for Summary Judgment.)

4. The trial court erred in deeming the calculations in support of Invoice No. 0113.2015 improper and denying Norsk/NBS recovery of the liquidated damages set forth therein.

**LAW**

"Appellate review of the granting of a motion for summary judgment is *de novo*, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate." *Smitko v. Gulf S. Shrimp, Inc.*, 11-2566, p. 7 (La. 7/2/12), 94 So.3d 750, 755. "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. . . . The procedure is favored and shall be construed to accomplish these

---

[5] In designating the judgment as final and immediately appealable, the trial court noted that if the judgment was reversed, NBS's counterclaim could be tried with the remaining claims.

[6] NBS sought supervisory writs from the judgment denying its motion for summary judgment. Upon motion by PFS, this court consolidated the appeal and writ.

ends." La.Code Civ.P. art. 966(A)(2). On de novo review, "there is no deference to the trial judge's legal findings, and we make an independent review of the evidence in determining whether there is no genuine issue of material fact and whether the mover is entitled to judgment as a matter of law under La.Code Civ.P. art. 966." *Bridges v. Cepolk Corp.*, 13-1051, p. 10 (La.App. 3 Cir. 2/12/14), 153 So.3d 1137, 1145, *writ denied*, 14-901 (La. 8/25/14), 147 So.3d 1117. "A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Smitko*, 94 So.3d at 755.

According to La.Code Civ.P. art. 966(D)(1):

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

Recently, in *Van Mol v. Beasley*, 15-869, p. 4 (La.App. 3 Cir. 2/3/16), 184 So.3d 280, 284 (alteration in original), this court discussed the law regarding the interpretation of contracts, writing:

> The Louisiana Supreme Court has stated:
>
> > "[W]hen a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law." *Sims v. Mulhearn Funeral Home, Inc.,* 07-0054, p. 10 (La.5/22/07), 956 So.2d 583, 590. "Interpretation of a contract is the determination of the common intent of the parties." La.Civ.Code art. 2045. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. *Sims,* 07-0054 at p. 7, 956 So.2d at 589; *McConnell v. City of New Orleans,* 35 La. Ann. 273 (1883). "When the words of a contract are clear and

4

> explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763.

*Prejean v. Guillory,* 10-740, pp. 6-7 (La.7/2/10), 38 So.3d 274, 279.

> To determine the meaning of words used in a contract, a court should give them their generally prevailing meaning.[7] If a word is susceptible to different meanings, it must be interpreted as having the meaning that best conforms to the object of the contract.[8] A provision susceptible of different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective.[9] Furthermore, each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.[10]

*St. Mary Operating Co. v. Guidry,* 06-1495, p. 6 (La.App. 3 Cir. 4/4/07), 954 So.2d 397, 402, *writ denied,* 07-962 (La.6/29/07), 959 So.2d 520, *quoting Claitor v. Delahoussaye,* 02-1632 (La.App. 1 Cir. 5/28/03), 858 So.2d 469, *writ denied,* 03-1820 (La.10/17/03), 855 So.2d 764 (internal citations omitted).

"Interpretation of a contract and, specifically the issue of whether a contract is ambiguous, is a question of law properly determined at the summary judgment stage." *Semco, LLC v. Grand Ltd.*, 16-342, p. 43 (La.App. 5 Cir. 5/31/17), 221 So.3d 1004, 1035, *writ denied,* 17-1291 (La. 11/6/17), 229 So.3d 475. "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a

---

[7] *See* La.Civ.Code art. 2047.

[8] *See* La.Civ.Code art. 2048.

[9] *See* La.Civ.Code art. 2049.

[10] *See* La.Civ.Code art. 2050.

standard form of one party must be interpreted, in case of doubt, in favor of the other party." La.Civ.Code art. 2056.

> True liquidated damages represent an amount, arrived at in a good faith effort by the parties at the time of contracting, to reasonably estimate the monetary loss which will probably be sustained in the event of a breach. . . . No matter how clearly such penalty clauses are written, courts as a matter of public policy should decline to enforce an agreement which clearly is not one for true liquidated damages.

*John Jay Esthetic Salon, Inc. v. Woods*, 377 So.2d 1363, 1367 (La.App. 4 Cir. 1979), *writ denied,* 380 So.2d 78 (La.1980).

## DISCUSSION

Based on the appellate standard of review, rather than discussing NBS's assignments of error individually, we will simply review the evidence submitted in favor of and in opposition to PFS's motion for partial summary judgment to determine whether it proved that it was entitled to judgment in its favor as a matter of law.

The purpose of the 2011 and 2012 EMAs was to aid PFS in marketing its products in the Russian Federation oil industry, as NBS had maintained an established presence in that market for approximately thirty years. The 2012 EMAs gave NBS "the exclusive right to distribute and sell" certain named PFS products to NBS's customers in the Russian Federation during the term of the agreement. The 2012 EMAs had an initial term of twenty-four months and was to automatically renew for successive five years terms. Paragraph 7(b) of the 2012 EMAs provided that "[e]ither party shall have the right to terminate this Agreement for breach of any material provision thereof by giving thirty (90) [sic][11] days advance written notice to the breaching party, specifying the act or omission

---

[11] According to Malvin Hoeydal, who signed the 2012 EMAs as CEO of NBS, the length of the termination clause in the 2011 EMA was shortened from ninety to thirty days. The September 26, 2016 deposition of Mr. Hoeydal was attached as Exhibit E to PFS's motion for summary judgment.

6

on which such termination is based." That provision further provided that "[i]f, under the circumstances present, it would appear that any breach is final, the complaining party may terminate this Agreement by giving notice to that effect." Paragraph 7(c) specified that if the EMAs were to be terminated for any "material breach," all confidential information acquired from either party "shall survive such termination and continue to be protected."

Thereafter, Paragraph 7(d), the "liquidated damages clause" at the heart of this appeal stated:

> PFS shall pay compensation to NBS for the period of 3 years from the date of cancellation in case of cancellation of this Agreement by PFS without any form of material breach directly caused by NBS as specifically stated within this Agreement. The compensation shall be calculated as follows: the gross margin of NBS between the purchase and the sales price for all PFS Products at the date of cancellation of the Agreement minus sales cost (including transport cost) of NBS multiplied by the future realistic sales volume of all PFS Products being sold on regular basis in the Territory for a projected period of 3 years from the date of cancellation of the Agreement by PFS without NBS having caused any material breach.

The 2012 EMAs did not contain a reciprocal provision obligating NBS to pay liquidated damages to PFS should it cancel the agreement as specified above.

The 2012 EMAs contained a Severability Clause which provides that "[i]f any provision of this Agreement is held invalid under any law, that provision shall be deemed severable and its invalidity shall not affect the remainder of this Agreement, which shall continue in full force and effect."

**PFS's Motion for Partial Summary Judgment**

PFS's motion for partial summary judgment asserted that NBS's counterclaim should be dismissed because the liquidated damages clause upon which it was based was incalculable as written, and thus unenforceable. Exhibit D to PFS's motion for partial summary judgment was the June 12, 2017 affidavit of A. Anderson Hartiens, a Certified Public Accountant (CPA) and Certified

Valuation Analyst who had previously been accepted as an expert in accounting and business valuations in Louisiana state and federal courts. According to his affidavit, CPA Hartiens reviewed the following documents: both 2012 EMAs;[12] the invoice from NBS to PFS dated June 18, 2015;[13] Mrs. Hoeydal's September 22, 2016 deposition;[14] the June 12, 2017 affidavit of Boyce Donald Burts, III;[15] the "Ukraine and Russia Sanctions." U.S. Department of State. U.S. Department of State, n.d. Web. 07 June 2017 (https://www.state.gov/e/eb/tfs/spi/ukrainerussia/); and the "Announcement of Expanded Treasury Sanctions within the Russian Financial Services, Energy and Defense or Related Materiel Sectors." U.S. Department of the Treasury, 12 Sept. 2014. Web. 07 June 2017 (https://www.treasury.gov/press-center/press-releases/Pages/jl2629.aspx).

Mr. Hartiens' affidavit then provided:

7. Assuming the February 10, 2012 Contracts are valid,[16] I offer my opinion regarding the liquidated damages calculation contained in Paragraph 7(d), which is identical in both Contracts. . . .

8. In my opinion as a Certified Public Accountant, liquidated damages are incalculable using the formula provided in Paragraph 7(d). The terms in the formula are indefinite, undefined, and ambiguous.

9. The term "the purchase and the sales price for all PFS Products at the date of cancellation of the Agreement" does not provide a time period to determine what qualifies as the purchase and sales price at the date of cancellation. It is also unclear whether that term refers to sales with NORSK/NBS or all PFS sales."

---

[12] *See* Exhibits A and B to PFS's motion for partial summary judgment.

[13] *See* Invoice No. 0113.2015 attached as Exhibit F to PFS's motion for partial summary judgment.

[14] Exhibit H to PFS's motion for partial summary judgment is the September 26, 2016 deposition of Mrs. Hoeydal.

[15] Exhibit C to PFS's motion for partial summary judgment is the June 12, 2017 affidavit of Boyce Donald Burts, III, who is sometimes referred to by the parties as "Donnie" Burts.

[16] In his affidavit, Mr. Hartiens stated that he was not offering any opinion on the validity of the "February 10, 2012 Contracts."

8

10. "Future realistic sales volume" is also an undefined, abstract, ambiguous, and a speculative term that does not provide a clear method, basis, or formula for determining a result. Since no actual sales took place between the companies, it makes the term "future realistic sales volume" a number that cannot be calculated. One cannot multiply a gross margin dollar amount by a "volume" and obtain any reasonable result.

11. "Regular basis" is also an undefined, abstract, and ambiguous term that does not provide enough information for determining that amount.

12. Because of the undefined, abstract, ambiguous, and speculative terms in the formula provided in Paragraph 7(d) of the Contracts, the amount of liquidated damages under the provision cannot be calculated.

13. As to the Invoice 0113.2015 from NORSK/NBS to PFS dated June 18, 2015, which purports to reflect the amount calculated as liquidated damages by NORSK/NBS under Paragraph 7(d) of the Contracts, it is my opinion as a Certified Public Accountant that the calculations are unsupported and incorrect.

14. The Invoice 0113.2015, item one, related to the damage paragraph, provides the amount of $442,179.80 as the "gross margin between the purchase and the sales price for all PFS Products at the date of cancellation of the Agreement *minus sales cost (including transport cost)*". No documentation or supporting information in connection with their gross margin calculation was provided with the invoice. Subsequently, NORSK/NBS produced documentation supporting their calculation. NORSK/NBS did not deduct the *sales cost* as required by 7(d). The actual calculation for damages provided by NORSK/NBS incorrectly shows a gross margin amount, that omitted actual sales cost, and that was multiplied by a percentage. Paragraph 7(d) requires that the gross margin amount is multiplied times a "future realistic sales volume", not a percentage. One cannot multiply a gross margin dollar amount by a "future realistic sales volume" and obtain any reasonable result. NORSK/NBS's calculation for damages incorrectly used a percentage (150%) instead of a sales volume as the multiplier as required by the agreement.

15. The Invoice 0113.2015 does not state what time period NORSK/NBS considered in determining the "Gross margin between the purchase and sales price for all PFS Products at the date of cancellation of the Agreement minus sales cost (including transport cost)."

16. The Invoice 0113.2015 provides, under item 2, "future very realistic modestly estimated sales volume of all PFS Products being sold on regular basis in the Territory for a projected period of 3 years from the date of cancellation of the Agreement by PFS" as 150%, but the Invoice provides no information on how NORSK/NBS arrived at that percentage or amount.

17. It is my understanding from the Affidavit of Boyce Donald Burts, III and the deposition of Victoria Hoeydal that all invoices issued by PFS to NORSK/NBS made during the term of the contract were considered as test and well trials[. ] There were no actual sales made for actual jobs since February 10, 2012, the date of the contract.

18. Because of the lack of actual sales, there is no "regular basis" from which to calculate "future realistic sales volume."

19. The sanctions imposed by the United States on the Russian Federation and certain industries and companies in the Russian Federation on September 12, 2014 would have a significant deleterious effect on "future realistic sales volume." The last invoice issued by PFS to NORSK/NBS was August 31, 2014.

Based on CPA Hartiens' affidavit and the remaining exhibits attached to its motion for partial summary judgment,[17] PFS submitted that the liquidated damages clause provided an ambiguous formula that was incalculable. Citing *John Jay*, 377 So.2d 1363, PFS contended that because the "formula presented in Paragraph 7(d) does not provide a method to reasonably estimate the monetary loss which will probably be sustained in the event of a breach," the liquidated damages clause should be invalidated. PFS further submitted that because it was undisputed that Mr. Hoeydal drafted the liquidated damages clause at issue using a standard provision that NBS used in its contracts, any ambiguities in that clause should be interpreted against NBS. Finally, citing *Lawrence v. Terral Seed, Inc.*, 35,019 (La.App. 2 Cir. 9/26/01), 796 So.2d 115, *writ denied*, 01-3134 (La. 2/1/02), 808 So.2d 341, PFS contended in its brief to this court that where a contract provides a

---

[17] PFS attached to its motion for partial summary judgment Exhibit G which consisted of the invoices NBS produced in support of Invoice 0113.2015.

method to determine a price, such as the liquidated damages provision herein, but that "method is ambiguous" and the parties to the contract "have not agreed on how to implement such a method, the contractual provision is void for uncertainty." Accordingly, PFS sought judgment as a matter of law invalidating the liquidated damages clause in the 2012 EMAs and dismissing NBS's counterclaim at its cost.

NBS opposed PFS's motion for partial summary judgment based upon its contention that Paragraph 7(d) was not ambiguous and that it was "applied properly in calculating the liquidated damages set forth in Invoice No. 0113.2015." It submitted that the terms used in the liquidated damages clause were those customarily used in the business world, and thus, should be easily understood by a businessman such as Mr. Burts. NBS attached as Exhibit E to its opposition a June 26, 2017 affidavit executed by Mrs. Hoeydal wherein she explained:

2. I personally prepared Invoice No. 0113.2015, to PFS dated June 18, 2015, using the formula set forth in paragraph 7D of the February 10, 2012 Exclusive Marketing Agreement between NBS/Norsk Bronnservice and PFS.

3. The "sales cost" set forth in the formula consists solely of "transport cost," which I included in my calculations as evidenced by the invoices attached to my deposition taken September 22, 2016, as part of Exhibit 4, in globo.

4. The figure of 150% I used in the formula as the multiplier to represent "future very realistic modestly estimated sales volume" was derived from the fact that the prior sales of PFS products in the Russian Federation were sales for the purpose of field testing by wholly new prospective clients, all of which were successful. Therefore, all future sales would increase in volume for actual production use, which I modestly estimated to be 50% more than the volume used for testing, thus the figure of 150%.

Making reference to the aforementioned deposition of Mr. Hoeydal, NBS claimed that the liquidated damages clause was not drafted by Mr. Hoeydal alone, but rather, it was the result of negotiations between him and Mr. Burts. NBS asked the

11

trial court to ignore CPA Hartiens' affidavit, suggesting that his opinion was speculative and conclusory and that "while he purport[ed] to have reviewed Mrs. Hoeydal's deposition, he glaringly left out her explanations relative to the calculation[s]" she performed. Citing La.Civ.Code art. 2012,[18] NBS submitted that "Louisiana courts actually have a tradition of deferring to the parties' stipulations on damages where the contract is freely negotiated, regardless of whether they approximate actual damages suffered," such that the trial court should award it $662,839.72 in liquidated damages, as sought in its counterclaim.

At the July 17, 2017 hearing on the competing motions for summary judgment, counsel for NBS stated that his client would voluntarily withdraw its claim to have the liquated damages amount enhanced by the multiplier provision because it conceded that there were factual issues regarding the multiplier which would preclude disposition of the matter by summary judgment. Thus, NBS sought judgment in its favor on its counterclaim in the amount of $441,893.00.

At the conclusion of the hearing, after hearing the argument of counsel, the trial court stated that it found the liquidated damages clause to be "ambiguous" and it struck the clause from the 2012 EMAs. In so doing, it explained that "there are no definitions in regards to any of the words. There's no definition of how exactly to calculate what . . . y'all are trying to come up with in the liquidated damages."

After having performed a de novo review of the evidence submitted in support of and in opposition to PFS's motion for partial summary judgment, we conclude that judgment was properly rendered in favor of PFS striking Paragraph 7(d) from the 2012 EMAs and dismissing NBS's counterclaim. We find that PFS properly supported its motion and met its burden of proving that the liquidated

_____

[18] Louisiana Civil Code Article 2012 provides that "Stipulated damages may not be modified by the court unless they are so manifestly unreasonable as to be contrary to public policy."

12

damages clause upon which it was based was incalculable as written, and thus unenforceable. Thereafter, the burden shifted to NBS to show that it would be able to prevail on its counterclaim based upon the liquidated damages clause. Rather than refuting the affidavit of CPA Hartiens with objective evidence, NBS relied on Mrs. Hoeydal's interpretation of the liquidated damages clause and her calculations of what damages were owed to it based upon that clause. According to her affidavit, Mrs. Hoeydal "modestly estimated" what "future sales" it would make of PFS's products. Those subjective explanations are not competent evidence to oppose PFS's properly supported motion for summary judgment. After applying the evidence to the applicable jurisprudence, we conclude that PFS met its burden of proving as a matter of law that the liquidated damages clause was unsusceptible of calculation.

The parties included a severability clause in the 2012 EMAs, thus evidencing their intent that if any provision was "held invalid under any law, that provision **shall** be deemed severable." (Emphasis added.) Accordingly, we conclude that the liquidated damages clause was properly stricken from the 2012 EMAs. Thus, we find no merit to NBS's appeal, and we affirm the judgment granting PFS's motion for partial summary judgment.

**NBS's Motion for Summary Judgment**

NBS sought writs from the trial court's denial of its Motion for Summary Judgment. In its motion, NBS sought dismissal of PFS's claims against it along with a judgment on its counterclaim ordering PFS to pay it $662,269.70 in liquidated damages. Because the judgment which we affirm in this appeal dismissed NBS's counterclaim, NBS's writ application is moot and is hereby denied.

**DECREE**

The judgment rendered in favor of Professional Fluid Services, LLC and against Norsk Bronnservice AS and NBS Solutions AS, granting Professional Fluid Services, LLC's motion for partial summary judgment, striking Paragraph 7(d) from the 2012 Exclusive Marketing Agreements, and dismissing the counterclaim filed by Norsk Bronnservice AS and NBS Solutions AS, is affirmed. NBS's application for supervisory writs is denied. All costs of this appeal and writ are assessed against Norsk Bronnservice AS and NBS Solutions AS.

**AFFIRMED**. **WRIT DENIED.**

**Conery, J., dissents and assigns reasons.**

I respectfully dissent. In my view, this case is not appropriate for summary judgment.

The trial court and the majority found ambiguity in Section 7(d) of the contract based largely on the testimony of plaintiff-respondent's Certified Public Accountant. In doing so, in my view the trial court and the majority improperly weighed the evidence and made factual findings that are in dispute. I would find that there are genuine issues of material fact as to the intent of the parties in the interpretation of Section 7(d).

In considering a motion for summary judgment, the court cannot "consider the merits, make credibility determinations, evaluate testimony[,] or weigh evidence." *Prop. Ins. Ass'n of La. v. Theriot*, 09-1152, p. 3 (La. 3/16/10), 31 So.3d 1012, 1014 (quoting *Suire v. Lafayette City-Parish Consol. Gov't*, 04-1459, p. 11 (La. 4/12/05), 907 So.2d 37, 48). Additionally, although "summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor." *Willis v. Medders*, 00-2507, p. 2 (La. 12/8/00), 775 So.2d 1049, 1050.

I would reverse the summary judgment and remand the case to the trial court for a full trial on the merits.